Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                     1:19-cv-03735

Curtis Winston, Jane Doe, individually and
on behalf of all others similarly situated

                                    Plaintiffs

                                                                 Complaint

               - against -

The Hershey Company

                                    Defendant

         Plaintiffs by attorneys alleges upon information and belief, except for allegations

pertaining to plaintiffs, which are based on personal knowledge:

         1.      The Hershey Company ("defendant") manufactures, distributes, markets, labels and

sells peanut butter cups in a white confection coating under the Reese's brand name ("Products").

         2.      The Products are available to consumers nationwide from brick and mortar and

online stores of third-parties and/or defendant's website or stores.

         3.      The Products are uniformly marketed as "white" alternatives to the standard peanut

butter cups enrobed in milk, and dark, chocolate.

         4.      Defendant has promoted the Products as white chocolate by including it in its

marketing campaigns paired with the milk and dark chocolate varieties

         5.      Where a reasonable consumer is presented with "milk" and "dark" varieties of a

chocolate product, and another version of that (chocolate) product is identified only as "White,"

they will refer to and understand that product to be or consist of "white chocolate," and expect it

1

to contain cacao-derived ingredients.

6.     The Products are misleading because despite being portrayed and represented as a "white [chocolate]" alternative to the milk and dark varieties, through association, common usage, omission and absence of clarification, they do not contain white chocolate, because the ingredient list reveals the absence of cocoa butter (cacao fat).



Ingredients: Peanuts; Sugar; Vegetable Oil [Palm Oil; Shea Oil; Sunflower Oil; Palm Kernel Oil and/or Safflower Oil]; Skim Milk; Dextrose; Corn Syrup Solids; Lactose (Milk); Contains 2% or Less of: Salt; Lecithin (Soy); TBHQ and Citric Acid, to Maintain Freshness; Vanillin, Artificial Flavor; PGPR.

7.     Defendant has taken affirmative steps for consumers to mistakenly believe the Products contain white chocolate and has intentionally failed to correct the misimpressions.

8.     The absence of any modifying term before or after "White" renders the Products misleading because consumers are not able to differentiate between white chocolate and cheaper substitutes like compound or confectionary coating made from vegetable oils when the term "White" is applied to a product traditionally associated with chocolate.

9.     The Products do not contain any modifying or descriptive terms such as "[White] Crème," "[White] Confectionary Coating" or "[White] Compound Coating" which would clarify

ambiguity or misimpression.

10.   The Products' packaging is completely ivory white as opposed to the standard product color with beige or less bright font color

11.    (3) the Products are situated adjacent to other chocolate-based versions of the Products instead of in a section devoted to non-chocolate confectionary

12.   The Products are promoted as "white" chocolate versions of the standard chocolate product types by defendant's collective and joint promotion of the white variety with its milk and dark chocolate counterparts.



13.   Defendant or its agents provide descriptions of the Products to third-parties, who designate the Products as "white chocolate."

CandyPros.com



3

CandyWarehouse.com



CandyFavorites.com

14.    Defendant has the ability to change erroneous listings of its Products by third-parties in the same way a movie studio has the ability to issue "takedown requests" to unauthorized distributions of media content.

15.    Consumers' understanding of a product includes factors beyond the text on the label, such as comparison products and product placement.

16.    Defendant's retail strategy has furthered consumer's mistaken beliefs by:

- Arranging, through instructions to suppliers and vendors, for the Products to be placed alongside milk and dark chocolate varieties;

- Identifying or acceding to identification of the Products by third-parties, as "Reese White Chocolate Cup" stock keeping unit (SKU);

- Placing the Products with other chocolate products as opposed to non-cacao confections.

 

17.    Not only reasonable consumers, but journalists also confuse the Products with real white chocolate.

18.    In 2018, an Iowa man found a Reese's Peanut Butter Cup without peanut butter.

19.    Defendant's representatives thoughtfully provided him a bounty of peanut butter cups in all varieties and a light-hearted letter, stating "Sometimes we like to remind people you need both chocolate AND peanut butter…here's enough chocolate AND peanut butter."

 

20.     In writing up this feel-good story, a reporter described the lucky man's haul as consisting of "dark chocolate cups, regular cups, big cups, white chocolate cups and the king size Nutrageous bars."[1]

21.     This incident is not offered to impute conduct to defendant.

22.     Rather, it evinces how consumers and the public refer to and characterize the Products – as "white chocolate" varieties of the overall product line.

23.     Chocolate – whether milk, dark or white – owes its popularity largely to "its unique eating characteristics" – because "[I]t melts in the mouth, imparting a sensation of cooling. The surfaces of the oral cavity are coated by the melted chocolate and flavour is released."[2]

24.     This appreciation for chocolate is not new, as cacao beans were highly valued in Mesoamerica, even used as a currency by the Aztec rulers.

25.     The value of the cacao beans was due to its ability to release and impart flavor and provide energy and nutrition.

26.     Like all highly valued commodities, they attracted con men seeking to dupe the unwitting customer.

27.     Aztec traders were no different than today's hucksters, employing various methods to disguise fake cacao beans, including "hot ashes, chalk, and a generous coating of amaranth dough, wax, or avocado pits" and "mix[ing] the fake cacao with pure Theobroma cacao beans."[3]

28.     This enduring appreciation for chocolate, including the white variety, means there are constant attempts at passing off white-colored confections which lack the key component of cacao fat, in sufficient quantities to impart the attributes valued by consumers.

---

[1] Ashley Hoffman, Man's Chocolate Dreams Fulfilled After a Disappointing Piece of Candy, Time, Apr. 20, 2018.
[2] Bettina Wolf, Rheological properties of chocolate, New Food, May 13, 2011.
[3] Deceptive Chocolate: Tracing Counterfeit Cacao Culture from Aztec Currency to Modern Production, Mar. 15, 2019 on Chocolate Class: Multimedia Essays on Chocolate, Culture, and the Politics of Food.

29.   These deceptive tactics are not surprising, given the recent surge in "food fraud" incidents across the world.[4]

30.   Whether reports of cottonseed oil substituting for extra virgin olive oil, the horsemeat scandal in the European Union where beef was replaced, or the dangers of melamine in milk products from China, no country in today's inter-connected world is completely protected.[5]

31.   While food fraud is often associated with negative impacts on public health from physically harmful ingredients, the Congressional Research Service concluded that non-harmful product alterations and representations represent a distinct sub-type of food fraud.

32.   In the case of white chocolate products, this includes the (1) replacement of valuable ingredients – cocoa butter -  with less expensive substitutes like vegetable fats like palm oil and (2) addition of "small amounts of a non-authentic substance to mask inferior quality ingredient[s]" such as color additives or preservatives.[6]

33.   Food fraud also encompasses the deliberate misidentification and obfuscation of a product's identity or marketing a version of a commonly recognized food which lacks the characterizing and valuable ingredients ("imitation foods").

34.   In the case of white chocolate, it is the minimum amount of cacao fat (20%) that separates this food from mere confectionary, or candy.

35.   Consumers expect certain attributes and qualities from products represented and characterized as a type of chocolate, due to the common expectation they will contain cacao-derived ingredients – primarily cocoa nibs and cocoa butter.

---

[4] USP press release, "Food Fraud Reports Up 60% Since 2010," January 23, 2013.
[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019).
[6] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

36.     The nibs provide the distinctive smell and taste of chocolate while cocoa butter provides the rich mouthfeel and sensory experience.

37.     By law, white chocolate refers to "the solid or semiplastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients…and one or more optional nutritive carbohydrate sweeteners."[7]

38.     The reason white chocolate has certain minimum requirements is to prevent consumers from being deceived by products that appear to be white chocolate, yet contain cheaper and lower quality vegetable fats, like palm and soybean oil, instead of higher quality cacao fat.

39.     As an ingredient with applications beyond confectionery to cosmetics and pharmaceuticals, there is a strong incentive for bad actors to "pass off" inferior, cheaper and non-cacao fat ingredients as "white chocolate" by omission, association, implication or representation.

40.     Because the Products are expected to contain cacao fat yet instead have other vegetable oils like palm oil, the Products are misleading to reasonable consumers.

41.     Whereas real white chocolate dissolves on the tongue due to cocoa butter's melting point at body temperature, the Products' white compound coating lacks cocoa butter, and has a higher melting point, so it takes longer to melt in one's mouth.

42.     The absence of cacao-derived ingredients from white compound or confectioner's coating results in limited flavor depth.

43.     There is no requirement that the Products declare "white chocolate" for the representations to be misleading.

44.     This is because the label representations are not made in a vacuum, but in an

---

[7] 21 C.F.R. §163.124; defendant with Chocolate Manufacturers Association were responsible for establishing white chocolate standard of identity; Citizen Petitions from Hershey Foods, filed December 10, 1992, Docket No. 86P-0297/CP2 and  the Chocolate Manufacturers Association, filed March 2, 1993, Docket No. 93P-0091/CP1.

environment where consumers have certain knowledge, associations and expectations.

45.     Plaintiffs did not know, nor had reason to know, that the Product did not contain real white chocolate and were actually imitations, because the most-valued component – cacao fat – was substituted for lesser quality ingredients – palm, shea and sunflower oils.

46.     Had Plaintiff and Class members known the Product did not contain real white chocolate, they would not have bought the Product or would have paid less for it.

47.     The Products contain other representations which are misleading and deceptive.

48.     As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $1.59 per 1.39 oz (39 g) excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

49.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

50.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

51.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

52.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

53.     A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

54.     Plaintiff Winston is a citizen of Kings County, New York.

55.     Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named

plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

56. The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

57. Defendant is a Delaware corporation with a principal place of business in Hershey, Pennsylvania.

58. During the class period, Named Plaintiffs and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

59. Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

60. Named Plaintiffs and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

61. The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

62. The present complaint contains Named Plaintiffs from: New York, who will represent the state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitation in that State.

63. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named Plaintiffs and Jane Doe Plaintiffs and class members are entitled to damages.

64. Named Plaintiffs' and Jane Doe Plaintiffs' claims and the basis for relief are typical

to other members because all were subjected to the same representations.

65.    Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

66.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

67.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

68.    Named Plaintiffs' and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

69.    Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories

70.    Named Plaintiffs and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiffs asserting the consumer protection laws of their individual states.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
e.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
j.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

71. Named Plaintiffs and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States, *supra*.

72. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair.

73. Defendant's acts, practices, advertising, labeling, packaging, representations and

omissions are not unique to the parties and have a broader impact on the public.

74. Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product or service type.

75. After mailing appropriate notice and demand, Jane Doe California and Massachusetts Plaintiffs and other plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended the present complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws ch. 93A.

76. Where applicable, subclasses of plaintiffs will seek injunctive and equitable relief and attorney fees for violations of relevant law, i.e., CLRA for California Subclass. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203.

77. The representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

78. Named Plaintiffs and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

79. Defendant misrepresented the misrepresented the substantive, compositional, health, organoleptic, sensory and/or nutritional attributes of the Products.

80. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

81. This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product or service type.

82.     The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

83.     Named Plaintiffs and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

84.     Named Plaintiffs and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability,<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

85.     Named Plaintiffs and Jane Doe Plaintiffs incorporate by reference all preceding paragraphs.

86.     Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

87.     The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and/or other attributes when they did not.

88.     Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

89.     This duty is based, in part, on defendant's position as one of the largest users of the characterizing ingredient or flavor in the world.

90.     The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that Product was a different variety than the other product line offerings (milk, dark chocolate) as opposed to being of a whole differnet type (compound coating).

91.     Named Plaintiffs and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

92.     The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

93.     To the extent notice may be required, Named Plaintiffs and Jane Doe Plaintiffs either have sent or intend to send notice to defendant and reserve all rights to amendment of the complaint.

94.     Named Plaintiffs, Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

Fraud

95.     Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

96.     Defendant's purpose was to sell a product which contained a valuable characterizing ingredient or flavor, and represent the Products contained sufficient independent amounts of said ingredient or flavor.

97.     Defendant's fraudulent intent is evinced by its absence of all modifying or clarifying terms such as "crème," "coating," or "compound" in conjunction with the term "white."

98.     Defendant does not declare the products as a white chocolate version of the product type but that is the impression and intended result.

99.     Defendant's intent was to secure economic advantage in the marketplace against competitors.

100.    Named Plaintiffs and Jane Doe Plaintiffs and class members observed and relied on defendant's omissions and claims, causing them to pay more than they would have, entitling them

to damages.

Unjust Enrichment

101.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

102.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Named Plaintiffs and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   June 26, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03735
United States District Court
Eastern District of New York

Curtis Winston, Jane Doe individually and on behalf of all others similarly situated

                                        Plaintiff

        - against -

The Hershey Company

                                        Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 26, 2019

                                                    /s/ Spencer Sheehan
                                                    Spencer Sheehan