**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CURTIS WINSTON, JANE DOE, individually
and on behalf of all others similarly situated.

                     Plaintiffs,

          v.

THE HERSHEY COMPANY,

                  Defendant.

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:
:
:
:
:
:
:

Case No. 19-cv-3735 ENV-JO

**DEFENDANT THE HERSHEY**
**COMPANY'S MOTION TO DISMISS**
**THE COMPLAINT**

**Served on: January 16, 2020**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

    A.    The Parties ............................................................................................. 1

    B.    Plaintiff's Claims .................................................................................. 2

    C.    Procedural History ................................................................................ 4

III.    LEGAL STANDARD ......................................................................................... 5

IV.    ARGUMENT ...................................................................................................... 6

    A.    Plaintiff fails to state a claim under the New York General Business Laws. ........ 6

        1.    Plaintiff has not identified any conduct by Hershey that is materially misleading. ....................................................................... 7

        2.    Plaintiff has failed to plead facts sufficient to show causation. ............... 10

        3.    Plaintiff failed to plead reliance sufficient to support his claim under GBL section 350. ........................................................... 13

    B.    Plaintiff fails to state claims for breach of warranties. ........................ 15

        1.    Plaintiff fails to state a claim under the MMWA. .............................. 16

        2.    Plaintiff fails to state a claim for breach of common law warranties. .............................................................................. 17

            a.    Breach of Express Warranty ..................................................... 17

            b.    Breach of the Implied Warranty of Merchantability ................... 21

    C.    Plaintiff fails to state a claim for fraud. .............................................. 21

        1.    Fraudulent Misrepresentation or Omission .............................. 22

        2.    Scienter (Fraudulent Intent) ......................................................... 24

        3.    Justifiable Reliance .................................................................. 25

    D.    Plaintiff fails to state a claim for common law unjust enrichment because it is duplicative of his contract and statutory claims. .......................... 26

    E.    Plaintiff's request for injunctive relief should be dismissed. ................ 27

V.    CONCLUSION .................................................................................................. 28

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ................................................................12

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986)...............................................................................21

*Alce v. Wise Foods, Inc.*,
   No. 17 CIV. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ...........27

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
   752 N.Y.S.2d 400 (2002)........................................................................6, 14, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5, 13

*Becker v. Cephalon, Inc.*, No. 14 CIV. 3864 NSR,
   2015 WL 5472311 (S.D.N.Y. Sept. 15, 2015)....................................................13

*Belfiore v. Procter & Gamble Co.*,
   94 F. Supp. 3d 440 (E.D.N.Y. 2015) ..................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................... passim

*Berkman v. Robert's Am. Gourmet Food, Inc.*,
   16 Misc. 3d 1104(A), 841 N.Y.S.2d 825 (Sup. Ct. 2007) ..............................13, 14

*Brazil v. Dole Food Co.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ................................................................16

*Campbell v. Freshbev LLC*,
   322 F. Supp. 3d 330 (E.D.N.Y. 2018) ................................................................21

*CBS Inc. v. Ziff-Davis Pub. Co.*,
   75 N.Y.2d 496, 553 N.E.2d 997 (1990)..............................................................20

*Chen v. Dunkin' Brands, Inc.*, No. 1:17-cv-3808-CBA-RER,
   2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018) .........................................8, 16, 17

*Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV 17 01875 MWF MRWx,
   2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) .....................................................8

## TABLE OF AUTHORITIES
(continued)

Page

*Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA,
2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ...................................................................7, 9

*Cohen v. JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007) .............................................................................................7

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012) ...............................................................................................26, 27

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................................25

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...........................................................................10, 13

*Davis v. Hain Celestial Grp., Inc*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..........................................................................8, 9, 24

*DeAngelis v. Timberpeg E., Inc.*,
858 N.Y.S.2d 410 (2008) .................................................................................................6

*DiBartolo v. Abbott Labs.*,
914 F. Supp. 2d 601 (S.D.N.Y. 2012) ...............................................................................21

*DiGangi v. Gov't Emp'rs Ins. Co.*, No. 13-CV-5627 DLI RLM,
2014 WL 3644004 (E.D.N.Y. July 22, 2014) .....................................................................15

*Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 JS AKT,
2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...........................................................13, 17, 21

*Fagan v. AmerisourceBergen Corp.*,
356 F. Supp. 2d 198 (E.D.N.Y. 2004) ...............................................................................18

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) .........................................................................................5, 7

*Gale v. Int'l Bus. Machines Corp.*,
9 A.D.3d 446 (2004) ...............................................................................................10, 11, 13

*Georgia Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511 (2012) .....................................................................................................26

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F. Supp. 2d 439 (E.D.N.Y. 2007) .................................................................................7

## TABLE OF AUTHORITIES
(continued)

Page

*Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX,
2012 WL 1893818 (C.D. Cal. May 18, 2012) ............................................................7

*In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).......................................7, 16, 20, 25

*In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB,
2013 WL 2303727 (S.D.N.Y. May 22, 2013) .........................................................19

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*,
909 F.2d 698 (2d Cir. 1990).....................................................................................19

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM),
2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).......................................21, 23, 24, 27

*Jackson v. Eddy's LI RV Ctr., Inc.*,
845 F. Supp. 2d 523 (E.D.N.Y. 2012) ....................................................................21

*Jessani v. Monini N. Am., Inc.*,
744 F. App'x 18 (2d Cir. 2018) ................................................................................7

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012) ..............................................................................................13

*Leider v. Ralfe*,
387 F. Supp. 2d 283 (S.D.N.Y. 2005).....................................................................13

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006).............................................................................22, 24

*McGill v. Gen. Motors Corp.*,
231 A.D.2d 449, 647 N.Y.S.2d 209 (1996) .....................................................14, 15

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).....................................................................................27

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ...............................................................................................6, 7

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F. Supp. 2d 439 (S.D.N.Y. 2005)...............................................................11, 12

*Prue v. Fiber Composites, LLC*, No. 11-CV-3304 ERK LB,
2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012) ........................................................21

# TABLE OF AUTHORITIES
(continued)

**Page**

*Schumaker v. Mather*,
  133 N.Y. 590, 30 N.E. 755 (1892) ........................................................................25

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 JG RML,
  2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ......................................................27

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009)......................................................................................6

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB,
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ......................................................26

*Tomasino v. Estee Lauder Companies Inc.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) .....................................................................20

*Tomasino v. Estee Lauder Cos., Inc.*, No. 13-CV-4692 ERK RML,
  2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015) .......................................................13

*Tyman v. Pfizer, Inc.*, No. 16 CV 6941-LTS-BCM,
  2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) ..........................................................20

*Tyman v. Pfizer, Inc.*, No. 16-CV-06941 LTSBCM,
  2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) .......................................................20

*Verzani v. Costco Wholesale Corp.*, No. 09 CIV 2117 CM,
  2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010).........................................................7

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .....................................................................9

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ......................................................13, 22, 23, 24

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015).........................................................14, 15, 27

*Wilner v. Allstate Ins. Co.*,
  893 N.Y.S.2d 208 (2010) .........................................................................................7

*Wojcik v. Empire Forklift, Inc.*,
  14 A.D.3d 63, 783 N.Y.S.2d 698 (2004) ...............................................................20

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Wright v. Publishers Clearing House, Inc.*,
   372 F. Supp. 3d 61 (E.D.N.Y. 2019) ........................................................................12

**STATUTES**

15 U.S.C. §§ 2301 *et seq.*........................................................................4, 15, 16, 17

15 U.S.C. § 2310(d)(3) ........................................................................17

N.Y. U.C.C. Law § 2-313(1)(a) ........................................................................17

New York General Business Law § 349 ........................................................... passim

New York General Business Law § 350 ........................................................... passim

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................ passim

Fed. R. Civ. P. 12(b) ........................................................................4

Fed. R. Civ. P. 12(e) ........................................................................11

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 26 (1958) ........................................................19

Restatement (Second) of Agency § 27 (1958) ........................................................19

## I.    INTRODUCTION

Plaintiff Curtis Winston's ("Plaintiff") complaint against Defendant The Hershey Company ("Hershey") defies common sense.  Plaintiff falsely accuses Hershey of misleading consumers into believing that Reese's® White (the "Product" or "Reese's® White"), a snack product coated in a white confectionary coating, is in fact white chocolate.  In support of his claims for violation of New York General Business Law sections 349 and 350, breach of warranty, and fraud, Plaintiff identifies several types of conduct that he falsely claims reflects a scheme to deceive consumers into believing that a variety of a beloved candy is masquerading as something that it is not.  But Plaintiff's allegations are entirely conclusory, and in the case of the fraud and breach of warranty claims, fall far short of the level of specificity in pleading required by Federal Rule of Civil Procedure 9(b).  He has not plausibly identified any representation or omission by Hershey that would support his claims, nor has he alleged that he was specifically aware of any particular representation or statement before he purchased Reese's® White.  And significantly, Plaintiff has not plausibly alleged that a reasonable consumer would believe that Reese's® White is white chocolate.

Plaintiff's complaint falls far short of sufficiently alleging the elements of his claims of consumer deception, breach of warranty, and fraud.  This failure is fatal.  Accordingly, Hershey respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

## II.    BACKGROUND

### A.    The Parties

Hershey, a Delaware corporation based in Hershey, Pennsylvania, produces chocolate and other snacks.  Dkt. No. 1, ¶ 57 (Compl.).  Hershey "manufacturers, distributes, markets, labels and sells" its treats, which consumers purchase online or at a brick-and-mortar store of a

third-party retailer.  *Id.* ¶¶ 1–2.  Hershey makes beloved candy brands like Jolly Rancher®, Twizzlers®, Kit Kat® bars, and of course, Hershey's Kisses®.

Hershey also produces Reese's® peanut butter cups, a confection consisting of a peanut butter filling enrobed in one of a variety of coatings, including milk chocolate and dark chocolate.  At issue here is Reese's® White, a variety of its peanut butter cups made using "a white confection coating."  Dkt. No. 1, ¶ 1.

Plaintiff is a New York citizen.  *Id.* ¶ 54.  He claims he was misled into purchasing Reese's® White for a premium price, because he believed it contained white chocolate.

**B.    Plaintiff's Claims**

Plaintiff alleges that Hershey misleads consumers into believing that Reese's® White contains white chocolate, even though the product does not contain cocoa butter (cacao fat) and thus does not meet the U.S. Food & Drug Administration's ("FDA") standard of identity for white chocolate.  Dkt. No. 1, ¶¶ 34–48.  Plaintiff claims Hershey has "taken affirmative steps" to mislead consumers and "intentionally failed to correct . . . misimpressions."  *Id.* ¶ 7.  Plaintiff accuses Hershey of:

- "[U]niformly market[ing] [Reese's® White] as [a] 'white' alternative[] to the standard peanut butter cups enrobed in milk, and dark, chocolate[.]" *Id.* ¶¶ 3–6, 12.

- Omitting "modifying or descriptive terms such as '[White] Crème,' '[White] Confectionary Coating' or '[White] Compound Coating' which would clarify ambiguity or misimpression." *Id.* ¶¶ 8–9.

- Providing (directly or through unidentified "agents"), "descriptions of the Products to third-parties, who designate the Products as 'white chocolate[]'" **or** failing to remove "white chocolate" references made by third parties. *Id.* ¶¶ 13–14.

- Misleading product placement:  according to Plaintiff, "the Products are situated adjacent to other chocolate-based versions of the Products [or with other chocolate candy] instead of in a section devoted to non-chocolate confectionary[.]" *Id.* ¶¶ 11, 16.

- Using packaging that "is completely ivory white as opposed to the standard product color with beige or less bright font color[.]"  *Id.* ¶ 10.

Absent from the above allegations are any facts detailing specific marketing campaigns or statements that are attributable to Hershey.  *See generally id.*

As Plaintiff acknowledges, the "ingredient list [for Reese's® White] reveals the absence of cocoa butter (cacao fat)."  *Id.* ¶ 6.  Indeed, the ingredient list pictured in the complaint discloses that Reese's® White does not contain any chocolate.  *See id.*

INGREDIENTS: PEANUTS; SUGAR; VEGETABLE OIL [PALM OIL; SHEA OIL; SUNFLOWER OIL; PALM KERNEL OIL; AND/OR SAFFLOWER OIL]; SKIM MILK; DEXTROSE; CORN SYRUP SOLIDS; LACTOSE (MILK); CONTAINS 2% OR LESS OF: SALT; LECITHIN (SOY); TBHQ AND CITRIC ACID, TO MAINTAIN FRESHNESS; VANILLIN, ARTIFICIAL FLAVOR; PGPR. ⓤⒹ

Ingredients: Peanuts; Sugar; Vegetable Oil [Palm Oil; Shea Oil; Sunflower Oil; Palm Kernel Oil and/or Safflower Oil]; Skim Milk; Dextrose; Corn Syrup Solids; Lactose (Milk); Contains 2% or Less of: Salt; Lecithin (Soy); TBHQ and Citric Acid, to Maintain Freshness; Vanillin, Artificial Flavor; PGPR.

Plaintiff also acknowledges that packaging for Reese's® White (pictured below) does not state "white chocolate."  *Id.* ¶ 43.



Still, Plaintiff claims that "[t]he Products are not required to state 'white chocolate' and not contain cacao fat, for consumers to be misled."  *Id.* ¶ 43.

Based on these allegations, Plaintiff raised five causes of action, on behalf of himself, and unidentified John and Jane Doe Plaintiffs, some of whom are residents of states other than New York:  (1) violation of New York's General Business Law ("GBL") sections 349 and 350 and the consumer protection laws of the other 49 states; (2) negligent misrepresentation; (3) common law breach of warranty (express and implied warranty of merchantability) and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"); (4) fraud; and (5) unjust enrichment.  Dkt. No. 1.  Plaintiff has since voluntarily dismissed his negligent misrepresentation claim and all consumer protection claims arising under the laws of states other than New York. Dkt. No. 10.

## C.     Procedural History

Plaintiff initiated this action on June 26, 2019.  Dkt. No. 1.  On September 18, 2019, Plaintiff sent a waiver of service of summons to Hershey, which Hershey signed and returned to Plaintiff the same day.  Dkt. No. 5.  On November 18, 2019, Hershey appeared in the action by filing its corporate disclosure statement and a letter requesting a pre-motion conference to discuss the bases for dismissing the complaint.[1]  Dkt. Nos. 6, 7.  Plaintiff responded in opposition to Hershey's request for a pre-motion conference on November 25, 2019.  Dkt. No. 9. On December 2, 2019, the Court issued an order denying Hershey's request for a pre-motion conference, finding it unnecessary upon review of the parties' pre-motion conference submissions at Dkt. Nos. 6 and 9, and granted Hershey permission to file a motion to dismiss.

---

[1] In accordance with Rule III.A of the Court's Individual Motion Practice and Rules, service of the letter requesting a pre-motion conference by the moving party within the time requirements of Fed. R. Civ. P. 12(a) shall constitute timely service of a motion made pursuant to Fed. R. Civ. P. 12(b).

On December 5, 2019, after counsel conferred concerning the asserted claims, Plaintiff filed a notice of voluntary dismissal, confirming dismissal of all unidentified John and Jane Doe Plaintiffs, and of the negligent misrepresentation and non-New York consumer protection claims.  Dkt. No. 10.

### III.    LEGAL STANDARD

To state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  This requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 430 (2d Cir. 2011)).

Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  When a complaint fails to state a claim upon which relief can be granted, this deficiency should be "exposed at the point of minimum expenditure of time and

money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and internal quotation marks omitted).

## IV.   ARGUMENT

**A.   Plaintiff fails to state a claim under the New York General Business Laws.**

To state a claim under GBL section 349, a plaintiff must plausibly allege (1) that defendant was engaged in a "consumer-oriented" business practice or act; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Similarly, a cause of action for false advertising under GBL section 350 is stated when the plaintiff alleges that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (2008) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2002)). Courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (hereinafter, "*Oswego*"); *see also Andre Strishak & Assocs.*, 752 N.Y.S.2d at 403.

Plaintiff's GBL claims fail for at least three reasons. First, the complaint fails to meet the objective test for determining whether Hershey's actions were materially misleading. Second, Plaintiff has failed to plead causation, an essential element of a claim under GBL sections 349 or 350. Finally, Plaintiff has not adequately pleaded that he relied on the statements he challenges, as required by GBL section 350.

1.      **Plaintiff has not identified any conduct by Hershey that is materially misleading.**

New York courts employ an objective test to assess whether an allegedly deceptive practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 216 (2010) (citations omitted); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (applying New York law); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (noting the standards under GBL section 349 and 350 are "substantively identical."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741; *see also Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (same); *Oswego*, 85 N.Y.2d at 26 (noting that the reasonable consumer test "may be determined as a matter of law or fact (as individual cases require)").

Courts in this and other districts have recognized that "in resolving the reasonable consumer inquiry, one must consider the entire context of the label." *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013); *see also Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4–5 (C.D. Cal. May 18, 2012) ("Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a [consumer deception claim].").[2] Federal courts routinely dismiss false advertising claims at the pleading stage, where, as here, the context of the packaging reveals that the allegedly deceptive practice was fully disclosed. *See, e.g., Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec.

---

[2] *See also Verzani v. Costco Wholesale Corp.*, No. 09 CIV 2117 CM, 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010), *aff'd,* 432 F. App'x 29 (2d Cir. 2011) (noting "[a] reasonable consumer reading [a product's] label would not pick out [one word] to the exclusion of all the information on the label[.]").

21, 2018) (rejecting argument that a nutrition bars' marketing and labeling misled consumers about its sugar content where "the actual ingredients were fully disclosed."); *Chen v. Dunkin' Brands, Inc.*, No. 1:17-cv-3808-CBA-RER, 2018 WL 9346682, at *7 (E.D.N.Y. Sept. 17, 2018) (dismissing challenge to "reasonable consumer's" interpretation of the term "Angus Steak" where "Angus beef" appeared on the product's ingredient list).[3]

*Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 336 (E.D.N.Y. 2018) is instructive. There, the plaintiff raised claims under GBL sections 349 and 350, based on the allegation that defendant misleadingly advertised its cold pressed juices. *Id.* at 332. Plaintiff alleged, *inter alia*, that he was misled into believing the juices he purchased were made predominantly of beet juice, rather than apple juice, because the beets were listed first on the front label of the product. *Id.* at 331. He also claimed to be misled by the absence of a clarifying product name (*e.g.*, "chard-flavored vegetable juice blend") that would highlight the fact that the premium ingredients were not the most predominant. *Id.* at 337. Finally, Plaintiff alleged that the label and juice color were misleading, because they "corresponded to the first-listed, premium ingredient." *Id.*

The court rejected these arguments, finding a reasonable consumer would not rely on the front label to understand the predominance of certain ingredients, because "[c]onsumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts." *Id.* In the court's view, the ingredients list clarified that premium ingredients were not most predominant. *Id.*; *see also id.* at 334 ("If a plaintiff alleges that an element of a product's label is

---

[3] *See also Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV 17 01875 MWF MRWx, 2017 WL 4286577, at *6 (C.D. Cal. Sept. 20, 2017); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) ("Every reasonable shopper knows that the devil is in the details. Moreover, any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.").

misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim.").

Here, as in *Clark* and *Davis*, the packaging label for Reese's® White clearly discloses that the product is not white chocolate.  *See* Dkt. No. 1, ¶¶ 6, 8.  To begin, the packaging does not include any statement describing the Product as "white chocolate" and that is the case on both the front and back of the label.  *See* Dkt. No. 1, ¶ 8 (front label); *id.* ¶ 6 (back label).  The word "chocolate" does not appear anywhere on the Product's label, including on the ingredients list, where "consumers are trained to look."  *Id.* ¶¶ 6, 8; *see also Davis*, 297 F. Supp. 3d at 337. Indeed, as Plaintiff acknowledges, the Product's ingredients list does not include cocoa butter (cacao fat).  Dkt. No. 1, ¶ 6.  Finally, to the extent that Plaintiff found the use of the term "white" with no modifier ambiguous, the ingredients list clarifies, as in *Davis*, exactly what ingredients are contained in Reese's® White ("palm oil, shea oil, sunflower oil, palm kernel oil; and/or safflower oil"), and what is not (chocolate, cocoa butter, or cacao fat).  *Davis*, 297 F. Supp. 3d at 334; *see also* Dkt. No. 1, ¶ 6.  "No reasonable consumer could have been misled in light of this clarifying language."  *Davis*, 297 F. Supp. 3d at 337.

Under the circumstances, it is simply not plausible that the Products' packaging or any marketing statement by Hershey would mislead a reasonable consumer into believing that the Product contains white chocolate.  *See, e.g., Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013) (finding dismissal appropriate because "where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the food or drink clear.").  Accordingly, Plaintiff's GBL claims should be dismissed with prejudice.

2.      **Plaintiff has failed to plead facts sufficient to show causation.**

GBL sections 349 and 350 require a plaintiff to show causation, *i.e.*, that he was injured

as a result of the defendant's allegedly misleading practice.  *Dash v. Seagate Tech. (U.S.)*

*Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014).  The complaint falls far short of

meeting this essential element, as Plaintiff alleges no facts regarding his exposure to the

allegedly misleading representations, let alone that his alleged injuries were caused by any such

exposure.  Absent allegations of causation, Plaintiff's claims under the General Business Law

must be dismissed.  *See Twombly*, 550 U.S. at 570 (where a plaintiff has not "nudged [his or her]

claims across the line from conceivable to plausible, [the] complaint must be dismissed").

"To properly allege causation [under the General Business Law], a plaintiff must state in

his complaint that *he has seen the misleading statements* of which he complains before [coming]

into possession of the products he purchased."  *Dash*, 27 F. Supp. 3d at 361 (citing *Goldemberg*

*v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (emphasis

added)).  These allegations must be pled with "sufficient specificity to withstand dismissal."

*Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2004).  Thus, a "plaintiff must 'describe[

] in detail the allegedly misleading and deceptive statements . . . upon which he relied in

purchasing the product.'"  *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y.

2015) (quoting *Dash*, 27 F. Supp. 3d at 361).  Plaintiff has not done this.

*Gale* is instructive.  After suffering permanent data loss from a hard drive failure, the

plaintiff brought claims under GBL sections 349 and 350, alleging IBM misleadingly advertised

the hard drive as "highly reliable."  9 A.D.3d at 446–47.  The court found "the plaintiff failed to

plead causation with sufficient specificity to withstand dismissal[,]" even though the complaint

cited "particular misleading statements," because the plaintiff had not alleged that "he saw any of

these statements before he purchased . . . his hard drive."  *Id.* at 447.  If the plaintiff did not see

any of these statements, the court reasoned, "they could not have been the cause of his injury[.]"
*Id*.  Without any "connection between the [defendant's allegedly] deceptive act and the
plaintiff's injury," dismissal of the GBL claims was appropriate.  *Id.*

A similar result was reached in *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.
Supp. 2d 439, 445–46 (S.D.N.Y. 2005).  There, the plaintiffs brought claims under GBL section
349, alleging, among other things, that "the combined effect of McDonald's various promotional
representations was to create the false impression that its food products were nutritionally
beneficial and part of a healthy lifestyle if consumed daily."  *Id.* at 442.  The complaint did not,
however, identify the various advertisements or representations that allegedly injured the
plaintiffs.  *Id.* at 445.  The court ordered plaintiffs to provide a more definite statement of their
claims, effectively holding that to survive dismissal, the complaint must "identif[y] the
advertisements about which the plaintiffs are complaining;" and provide "a brief explanation of
how the plaintiffs were aware of the acts alleged to be misleading[.]"  *Id.* at 446; *see also* Fed. R.
Civ. P. 12(e) (permitting a court to strike a pleading or issue any other appropriate order if an
order for more definite statement is not obeyed).

Here, the complaint falls short of the standards articulated in *Gale* and *Pelman*.  To begin,
Plaintiff does not actually allege that he personally saw and relied on any representation or
omission by Hershey.  *See generally* Dkt. No. 1.  Instead, the complaint contains only general,
conclusory allegations about reliance by "Named Plaintiffs, Jane Doe Plaintiffs and class
members[.]"  *Id.* ¶¶ 77, 83, 94, 100.  Although his complaint accuses Hershey of several "types"
of deceptive conduct, *see supra* Part II.B, Plaintiff provides no facts regarding the allegedly
misleading representations that influenced **his** purchasing decision.  *See generally* Dkt. No. 1.

Indeed, Plaintiff never identifies any specific representations that caused him to purchase Reese's® White—as New York law requires.  *Id.*; *see also Pelman*, 396 F. Supp. 2d at 445–46.

The complaint provides slightly more detail about the representations that allegedly influenced putative class members' decisions to purchase Reese's® White.  *See* Dkt. No. 1, ¶ 59 ("Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging."); *see also id.* ¶ 74 ("Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product or service type.").  This too, however, is insufficient to establish causation, as allegations of deceptive conduct must be tied to the named plaintiff.  *See Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (dismissing GBL section 349 claim where the complaint contained only general allegations about disclosures to all plaintiffs in the class but did not allege the specific disclosures made to the named plaintiff); *see also Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019) ("Section 349 does not create a strict liability scheme in which consumers may pursue private remedies simply because a defendant sent deceptions into the marketplace.  To succeed, plaintiffs must tether that deception to their individual circumstances.").  The absence of any allegations that Plaintiff was exposed to any of the "types" of deceptive conduct generally outlined in the complaint ***before*** purchasing Reese's® White is fatal to his GBL claims.

Because Plaintiff fails to adequately allege causation, an essential element of his sole claim under GBL sections 349 and 350, the claim should be dismissed.

**3.     Plaintiff failed to plead reliance sufficient to support his claim under GBL section 350.[4]**

Wholly apart from his failure to properly allege causation, the complaint fails under *Iqbal* and *Twombly* for the additional reason that Plaintiff does not allege that he relied on any misleading statement or representation by Hershey in purchasing Reese's® White.

A claim for violation of GBL section 350 requires the plaintiff to demonstrate actual, individual reliance on the challenged advertisement. *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).[5] "Typically, this means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she relied." *Id.* (citations omitted). As with causation, the plaintiff may not rest a claim of deceptive conduct on unsupported conclusory allegations, but, instead, he must "set forth specific details regarding the allegedly deceptive acts or practices." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997). That a named plaintiff is proceeding in a representative capacity is irrelevant, as each plaintiff in the class still must rely on the defendant's representation. *See Berkman v. Robert's Am. Gourmet Food, Inc.*, 16 Misc. 3d 1104(A), 841 N.Y.S.2d 825, at *4 (Sup. Ct. 2007) (declining to certify

---

[4] "Reliance is not an element of a claim under General Business Law § 349." *Gale*, 9 A.D.3d at 447. Accordingly, here Hershey only addresses Plaintiff's claim under GBL section 350.

[5] The body of New York precedent holding that a "plaintiff must . . . plead reliance on the misleading advertising at the time of purchase" in order to state a claim under Section 350 is well-developed and consistent. *Becker v. Cephalon, Inc.*, No. 14 CIV. 3864 NSR, 2015 WL 5472311, at *8 (S.D.N.Y. Sept. 15, 2015). In spite of this body of law, the Court of Appeals once stated, in dicta, that the Appellate Division erred in requiring reliance under "the statutory claim," citing both GBL sections 349 and 350. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). There is no indication, however, that by making this statement the Court of Appeals intended to overrule the settled body of New York precedent requiring reliance under GBL section 350 and, indeed, subsequent to *Koch*, courts have continued to require reliance. *See, e.g.*, *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *11 (E.D.N.Y. May 14, 2015) ("To state a claim for the violation of section 350 . . . a plaintiff must plead reliance on the misleading advertising at the time of purchase"); *Tomasino v. Estee Lauder Cos., Inc.*, No. 13-CV-4692 ERK RML, 2015 WL 1470177, at *4 (E.D.N.Y. Mar. 31, 2015) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance."); *Dash*, 27 F. Supp. 3d at 360 n.1 ("[Section] 350 [also] requires—unlike § 349—that the plaintiff must demonstrate reliance on the allegedly false advertising.").

-13-

class for settlement purposes, because issue of reliance under GBL section 350 was too individualized to satisfy the commonality requirement).  Indeed, as the court recognized in *Berkman*, "reliance cannot be presumed," as "purchasers could have varied and diverse reasons for their purchases, including taste, convenience, substantial value or even simple impulse buying at the check out [sic] counter."  *Id.*

To illustrate, the court in *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015), found reliance was adequately alleged where the named plaintiff alleged that "he viewed an insert containing statements by [defendant] 'prior to and at the time of purchase' and that he relied on the statements therein when deciding to purchase Cold–EEZE."[6]  By contrast, a claim under section 350 must be dismissed where there is no allegation that the plaintiff was aware of (and relied upon) the representation at the time of purchase.  *See, e.g.*, *McGill v. Gen. Motors Corp.*, 231 A.D.2d 449, 450, 647 N.Y.S.2d 209 (1996) ("As to the claim of violation of General Business Law § 350, there is no showing that any plaintiff relied upon or even knew about GM's allegedly false advertisements when the cars were purchased[.]"); *see also Andre Strishak & Assocs.*, 752 N.Y.S.2d at 403 (same).

Here, the complaint is devoid of factual allegations tending to demonstrate that Plaintiff actually relied on any advertising or labeling statement by Hershey in purchasing Reese's® White.  *See generally* Dkt. No. 1.  While Plaintiff vaguely alleges, without any factual details, that "[t]he representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages[,]" *see id.* ¶ 77, these bootstrap allegations related to the reliance of other putative class members must

---

[6] *See also id.* (finding another plaintiff adequately alleged reliance where the complaint stated that he heard defendant's media advertisements and relied on presentations therein to purchase defendant's product.)

be ignored.  *See* *DiGangi v. Gov't Emp'rs Ins. Co.*, No. 13-CV-5627 DLI RLM, 2014 WL 3644004, at *2 (E.D.N.Y. July 22, 2014) ("The fact that the Plaintiff has asserted a putative class action does not affect the Court's analysis of the validity of the named Plaintiff's claims.").

Plaintiff does not allege that he relied on any specific representation when he purchased the Product, or even that he saw or was otherwise aware of a specific representation prior to his purchase.  *See generally* Dkt. No. 1.[7]  But that is what New York law requires.  *See* *McGill,* 231 A.D.2d at 450; *Andre Strishak & Assocs.*, 752 N.Y.S.2d at 403.  Plaintiff's sweeping allegations regarding reliance fall far short of supporting a plausible inference that Plaintiff relied on any misleading statement by Hershey at the time of purchase, and they are distinguishable from the specific allegations found to support section 350 claims.  *See, e.g.,* *Weisblum*, 88 F. Supp. 3d, at 298.

Because Plaintiff's conclusory allegations do not "nudge" his section 350 claim "across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570, the claim must be dismissed.

## B.   Plaintiff fails to state claims for breach of warranties.

Plaintiff's third cause of action, for breach of express warranty, implied warranty of merchantability, and violation of the MMWA (collectively, the "breach of warranty claims") also fails.  As with his GBL claims, Plaintiff has failed to plausibly allege any breach of warranty—under federal statute or New York common law.

---

[7] Indeed, the complaint does not allege any specific representation, nor does it allege any facts about the circumstances of Plaintiff's purchase.  Hershey is left to guess when Plaintiff purchased Reese's® White, where it was purchased, what variety of the Product was purchased, and why Plaintiff made the purchase.  Plaintiff did not allege whether he purchased the standard 1.5-ounce, as pictured in paragraph eight of the complaint, or another size.  Nor did he allege whether he bought the Product from one of the websites pictured in paragraph 13 of the complaint, or in a store, and whether that store was in New York.  Further, the complaint does not allege what advertisements, if any, Plaintiff encountered prior to his purchase.

1.      **Plaintiff fails to state a claim under the MMWA.**

Plaintiff's MMWA claim fails as a matter of law, because the alleged misrepresentations on the packaging of Reese's® White are not a "written warranty" subject to the Act.[8]  A "written warranty" is defined as a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which . . . affirms or promises that such material . . . is defect free."  15 U.S.C. § 2301(6)(A).  District Courts have consistently concluded that allegedly misbranded labels "are, 'at most, product descriptions.'"  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (quoting *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)); *see also Chen*, 2018 WL 9346682, at *6 (dismissing claim based on allegedly deceptive advertising of a breakfast sandwich, because the claim at issue "Angus Steak," was a "product description" and not an actionable warranty under the MMWA); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013) (holding "'misbranded' labels . . . constitute mere product descriptions rather than promises of defect-free products or promises.").

Here, Plaintiff alleges simply, "[t]he Products warranted to Named Plaintiffs and the Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, compositions, organoleptic, sensory, physical and/or other attributes when they did not."  Dkt. No. 1 ¶ 87; *see also id.* ¶ 90 ("The Products warranted . . . that [they were] a different variety than the other product line offerings (milk, dark chocolate) as opposed to being of a whole differnet [sic] type (compound coating)").  From these allegations, Hershey infers that Plaintiff is alleging that the use of the term "White" on the products packaging constitutes an express

---

[8] The complaint does not identify a specific statement by Hershey that Plaintiff alleges is an express warranty.  *See* Dkt. No. 1, ¶¶ 85–94.  And, as discussed below, *see infra* pages 19–20, Plaintiff has not alleged facts permitting third-party conduct to be imputed to Hershey.

warranty that the products were white chocolate.  Because these allegations cannot be reconciled with the contrary body of law rejecting MMWA claims based on similar allegations, the MMWA claim should be dismissed.  *Chen*, 2018 WL 9346682, at *6.[9]

### 2.   Plaintiff fails to state a claim for breach of common law warranties.

#### a.   Breach of Express Warranty

To state a claim for breach of express warranty under New York law, a plaintiff must allege "[1] a *material statement* amounting to a warranty; [2] the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; [3] the *breach* of this warranty; and [4] injury to the buyer *caused* by the breach."  *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 JS AKT, 2015 WL 2344134, at *13 (E.D.N.Y. May 14, 2015) (quoting *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).  Plaintiff's complaint falls far short of these essential elements.

First, Plaintiff has not identified any statement by Hershey that can be considered an express warranty.  *See generally* Dkt. No. 1.  New York law "require[s] a plaintiff to plead some affirmative statement of fact that forms the basis of the warranty[,] [which is] definite enough so that its 'natural tendency [is] . . . to induce the buyer to purchase.'"  *Elkind*, 2015 WL 2344134, at *13 (citation omitted); *accord* N.Y. U.C.C. Law § 2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis

---

[9] Alternatively, the MMWA claim fails because the Court lacks subject matter jurisdiction.  The Act provides that a claim may not be brought in a United States District Court "if the amount in controversy of any individual claim is less than the sum or value of $25 . . . [or] if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3).  Here, Plaintiff, the sole named plaintiff, alleges that the Products are sold for "no less than $1.59," and given the Product's nature (candy), it is implausible that the amount in controversy for his individual claim even approaches $25.00.  Dkt. No. 1, ¶¶ 48, 54.  Thus, the claim does not meet the MMWA's jurisdictional requirement and must be dismissed.  *Chen*, 2018 WL 9346682, at *6 n.6.

of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").

Here, Plaintiff repeatedly accuses Hershey of "promot[ing] the Products as white chocolate by including it in its marketing campaigns paired with the milk and dark chocolate varieties[.]" Dkt. No. 1, ¶ 4; *see also, e.g., id.* ¶¶ 3–6, 12. Absent from the complaint, however, are any of the specific factual allegations required by New York law. Plaintiff does not identify (let alone describe) any specific marketing campaign, advertisement, or statement by Hershey; nor does he include any imagery from which one could infer such marketing. *See generally id.*[10] Instead, Plaintiff generally alleges that Hershey misrepresented certain attributes of the Product and warranted "that the Product was a different variety than the other product line offerings (milk, dark chocolate) as opposed to being of a whole differnet [sic] type (compound coating)." Dkt. No. 1 ¶¶ 87, 90. Plaintiff's failure to provide specifics is fatal to his express warranty claim. *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 216 (E.D.N.Y. 2004) ("Express warranty claims should be dismissed absent specific factual references in the complaint to any oral or written warranties.").

In his opposition to Hershey's request for a pre-motion conference, Plaintiff argues that his express warranty claims should survive a motion to dismiss, because they are based on "statements made by entities which defendant allegedly has the authority and ability to direct and control" whose conduct may be imputed to Hershey. Dkt. No. 9 at 2.[11] This argument

---

[10] Plaintiff includes an image in paragraph 12 of the complaint, presumably to support the proposition that Hershey promotes Reese's® White "with its milk and dark chocolate counterparts." But the dark chocolate variety is not pictured in the image, nor is there any statement affirmatively comparing the candies that are pictured.

[11] Presumably such an argument would relate to descriptions of the Product as "white chocolate" that are found on certain third-party websites. *See* Dkt. No. 1, ¶ 13.

necessarily fails.  To begin, the complaint fails to allege that Hershey directs or controls the conduct of any third party.  *See generally* Dkt. No. 1.  Indeed, the words "authority," "direct," or "control" (or their equivalents) are not found anywhere in the complaint.  *See generally id.*  Nor does the complaint allege facts from which one could plausibly infer the existence of an agency (or other such) relationship that would permit a third party's conduct to be imputed to Hershey. *See also Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990) (explaining that both express and implied agency relationships are created by written or spoken words or conduct, by the principal, which supports the reasonable conclusion that the principal desires the purported agent to act on his behalf); *see also* Restatement (Second) of Agency § 26 (1958); Restatement (Second) of Agency § 27 (1958).

Here, the complaint does not describe any interaction between Hershey and third-party retailers which can be reasonably interpreted as Hershey asking the third parties to act on Hershey's behalf.  *See generally* Dkt. No. 1.  The mere fact that the retailers sell Hershey's products, alone, is insufficient to establish an agency relationship.  S*ee In re Scotts EZ Seed Litig.,* No. 12 CV 4727 VB, 2013 WL 2303727, at *8 (S.D.N.Y. May 22, 2013).  Moreover, the complaint describes the third-party retailers as acting independently, and even faults Hershey for failing to ask the third parties to correct their "erroneous listings."  Dkt. No. 1, ¶ 13 ("Defendant or its agents provide descriptions of the Products to third-parties, **who designate the Products as 'white chocolate.**'") (emphasis added); *see also id.* ¶ 14.  Indeed, Plaintiff compares third-party retailers to bootleggers making "unauthorized distributions of media content."  *Id.* ¶ 14.  These allegations belie the existence of an agency relationship.

Second, Plaintiff has failed to adequately allege reliance.  In the context of an express warranty, New York law "require[es] no more than reliance on the express warranty as being a

part of the bargain between the parties." *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1001 (1990). At minimum, however, Plaintiff must allege that he saw or was aware of the statements allegedly comprising the express warranty at the time of his purchase. *See Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 65–66, 783 N.Y.S.2d 698, 700 (2004) (finding plaintiffs that failed to establish that they were aware of promotional literature before making a purchase "failed to allege an essential element of the formation of an express warranty"). As discussed above, *see supra* Part IV.A.3, Plaintiff falls short of even this minimal requirement.

Finally, Plaintiff's express and implied warranty claims fail because Plaintiff did not adequately allege that he provided Hershey with timely notice of the alleged breaches. To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. Law § 2-607(3)(a)). Here, Plaintiff alleges, "Named Plaintiffs and Jane Doe Plaintiffs either have sent or intend to send notice to defendant and reserve all rights to amendment of the complaint." Dkt. No. 1, ¶ 93. Not only are Plaintiff's allegations regarding whether and when he sent notice unclear; Plaintiff also fails to allege when he purchased the Product, or when he discovered the alleged breach of warranty (*i.e.*, that the Products do not contain white chocolate). *See generally id.* Because Plaintiff has not "allege[d] any facts that would permit the Court to conclude that [he] notified [Hershey] of the alleged breaches within a reasonable time after discovering them, [he is] 'barred from any remedy.'" *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 LTSBCM, 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *27.

### b.  Breach of the Implied Warranty of Merchantability

"An implied warranty of merchantability arises under the U.C.C. from any contract for the sale of goods where 'the seller is a merchant with respect to goods of that kind.'" *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 627 (S.D.N.Y. 2012) (quoting N.Y. U.C.C. Law § 2-314(1)).  In New York, implied warranty claims may be brought only by those in privity with the named defendant.  *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012); *Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 249 (2d Cir. 1986).

Here, Plaintiff has failed to allege where he purchased the Product, let alone that he bought it directly from Hershey.  *See generally* Dkt. No. 1; *see also id.* ¶ 58 ("Named Plaintiffs and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.").  Notwithstanding other grounds, this failure to allege contractual privity is fatal to a claim for breach of the implied warranty of merchantability.  *See Elkind*, 2015 WL 2344134, at *14 (dismissing implied warranty claims); *see also Prue v. Fiber Composites, LLC,* No. 11-CV-3304 ERK LB, 2012 WL 1314114, at *11 (E.D.N.Y. Apr. 17, 2012) (same).

### C.  Plaintiff fails to state a claim for fraud.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 343 (E.D.N.Y. 2018).  Claims of fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *2 (S.D.N.Y. Oct. 26, 2016).  The complaint falls far short of these requirements, as Plaintiff fails to

allege at least three essential elements—material misrepresentation or omission, intent to defraud, and justifiable reliance—with the requisite particularity.

### 1.      Fraudulent Misrepresentation or Omission

To comply with the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure, a "complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted); *see also Weaver*, 172 F.R.D. at 101.  "[W]here the alleged fraud consists of an omission and the [p]laintiff is unable to specify the time and the place . . . the [c]omplaint must still allege what the omissions were, the person responsible for failing to disclose, the context of the omission and the manner in which it misled [p]laintiff, and what [d]efendant obtained through the fraud." *Weaver*, 172 F.R.D. at 101.

*Weaver* is instructive.  There, the plaintiff, a consumer who purchased a minivan with a defective integrated child safety seat, raised a claim of common law fraud against the defendant auto manufacturer. *Weaver*, 172 F.R.D. at 98.  Plaintiff asserted two theories of fraud based on defendant's advertisements and promotional materials:  (1) intentional misrepresentation based on claims that the vehicles were safe; and (2) fraud by omission, based on the failure to warn of the defective child safety seat. *Id.* at 101–102.  The court rejected both theories, finding the plaintiff failed to plead fraud with the particularity required under Rule 9(b). *Id.*  In rejecting the notion of fraud by affirmative misrepresentation, the court noted that the complaint did not "specify the time, place, and content of the alleged fraudulent statements." *Id.* at 101.  And in its finding on the theory of fraud by omission, the court noted plaintiff's failure to "specifically identity [sic] the representations, advertisements, and promotional materials that omitted the reference to the defective child seats, misled him, and upon which he relied." *Id.* at 102.

Similarly, in *Izquierdo*, the plaintiff alleged that the defendant made materially false and misleading representations regarding the volume of candy contained in a box sold at a movie concession stand. 2016 WL 6459832, at *1, 9.  The complaint did not allege when or where the plaintiff purchased the candy, or even how much the plaintiff paid.  *Id.* at *9.  The court dismissed the fraud claim, finding the complaint fell "far short of Rule 9(b)'s pleading requirements," because it provided "only the barest details about [the plaintiff's] exposure to [the defendant's] alleged fraudulent misrepresentations or omissions."  *Id.*

Here, Plaintiff alleges that Hershey misleads consumers into believing that the Product contains white chocolate by marketing and promoting the Product "with its milk and dark chocolate counterparts." Dkt No. 1, ¶ 12; *see also id.* ¶¶3–6, 11.  But, Plaintiff does not allege the content of any marketing campaign or statement, let alone state when or where those statements were made.  *See generally* Dkt. No. 1.  Indeed, Plaintiff does not even allege that he saw Reese's® White placed or advertised with the milk chocolate and dark chocolate versions of the peanut butter cups.  *Id.*  As in *Weaver*, the complaint fails to state a claim for intentional misrepresentation because it does not "specify the content of the representations, advertisements, and promotions." 172 F.R.D. at 101.

Plaintiff's allegations of fraud by omission are similarly deficient.  Plaintiff bases his fraud claim on the "absence of all modifying or clarifying terms such as 'crème,' 'coating,' or 'compound' in conjunction with the term 'white[,]'" noting, "[d]efendant does not declare the products as a white chocolate version of the product type, but that is the impression and intended result." Dkt. No. 1, ¶¶ 97–98.  Absent from the complaint, however, are any allegations regarding the specific omission that Plaintiff relied upon, or how that omission misled Plaintiff. *See id.* ¶ 8 (alleging that the absence of a modifying term is misleading to consumers generally,

not to Plaintiff); *see also* *Weaver,* 172 F.R.D. at 101–02 (dismissing complaint that lacked such detail). Plaintiff does not allege when he purchased the Product, where he purchased the product, what he paid, or even that he saw and considered the Product's label or placement before making his purchase. *See, e.g.,* Dkt. No. 1, ¶¶ 58–59. Indeed, like *Izquierdo*, the complaint provides "only the barest details" about Plaintiff's exposure to Hershey's allegedly fraudulent misrepresentations and omissions. 2016 WL 6459832, at *9. Rule 9(b) requires more.

### 2. Scienter (Fraudulent Intent)

Plaintiff's fraud claim also falls short because the complaint fails to adequately plead the required element of scienter. "The simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' [sic] 'generalized motive to satisfy consumers' desires [or] increase sales and profits." *Davis*, 297 F. Supp. 3d at 337 (dismissing fraud claim in a putative class action challenging labeling of fruit juices) (internal quotation marks omitted). Rather, to satisfy Rule 9(b), a plaintiff must "alleg[e] facts to show that [a] defendant[] had both motive and opportunity to commit fraud, or . . . alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91. Once again, the complaint falls short.

Here, the complaint's allegations offer little more than rote allegations of a vague, unspecified corporate motive to increase profit, which are insufficient as a matter of law. The complaint generally alleges that consumers prefer chocolate, and claims companies try to capitalize on this preference and manage costs by passing off "white-colored confections" made of cheaper ingredients as white chocolate. *See* Dkt. No. 1, ¶¶ 22–45. From these allegations, Plaintiff summarily asserts that Hershey has omitted "modifying or clarifying terms such as 'crème'" from the Product's name because Hershey "inten[ded] . . . to secure economic

-24-

advantage in the marketplace against competitors." *Id.* ¶¶ 97–99.  But unsupported allegations that Hershey was generally motivated to increase its profits are wholly inadequate to plead scienter.  A desire to increase profits and market share is the sort of generalized motive that "would 'pertain to virtually any company that manufactures and distributes goods.'" *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25 (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)).

### 3. Justifiable Reliance

Finally, as discussed above in the context of Plaintiff's GBL and breach of warranty claims, *see supra* Parts IV.A.3 and IV.B.2.a, Plaintiff has not alleged any facts supporting the reliance element.  If Plaintiff has failed to adequately allege reliance to support his GBL and warranty claims, which are not subject to the heightened pleading standard of Rule 9(b), then *a fortiori*, he has fallen short of alleging justifiable reliance to support a claim of fraud.

Additionally, and alternatively, Plaintiff has failed to establish justifiable reliance to support his fraud claim because the Product's packaging and ingredients list disclose that the product does not contain any cacao fat, does not use the word chocolate, and in fact reveals the presence of the so-called lesser ingredients that Plaintiff alleges makes the Product an "imitation."  *See* Dkt. No. 1, ¶¶ 6, 22–44.  This is because, under New York law, "it is well settled that a plaintiff cannot establish justifiable reliance when, by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) (dismissing common law fraud claim based on alleged presence of non-functional slack fill, where the product's packaging revealed the weight of its contents); *see also Schumaker v. Mather*, 133 N.Y. 590, 596, 30 N.E. 755, 757 (1892) ("the general rule is that, if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by

the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.").

**D.      Plaintiff fails to state a claim for common law unjust enrichment because it is duplicative of his contract and statutory claims.**

To plead unjust enrichment under New York law, Plaintiff must allege:  (1) that defendant was enriched; (2) at plaintiff's expense; (3) under such circumstances "that equity and good conscience require restitution."  *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at \*26 (E.D.N.Y. Sept. 22, 2015).

"An unjust enrichment claim is rooted in 'the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another[.]'"  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012).  It is a quasi-contractual "obligation imposed . . . to prevent injustice, in the absence of an actual agreement between the parties."  *Id.*  To that end, the New York Court of Appeals has held that "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).  Unjust enrichment is only available in those "unusual situations" where a defendant "has not breached a contract nor committed a recognized tort," but the circumstances create "an equitable obligation running from the defendant to the plaintiff."  *Id.*  Thus, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.*; *see also Stolz*, 2015 WL 5579872 at \*26 (dismissing unjust enrichment claim that was duplicative of negligent misrepresentation claim).

Here, Plaintiffs' unjust enrichment claim incorporates the same factual allegations set forth in its fraud, warranty, and consumer protection claims.  *See* Dkt. No. 1, ¶ 101.  The complaint does not set forth any additional facts to demonstrate how the claim is different from

these other claims.  *See id.* ¶¶ 101–102; *compare id.* ¶¶ 101–102 *with id.* ¶¶ 70–77 (GBL claims), 85–94 (warranty claims), 95–100 (fraud claim).  Because all of Plaintiff's claims arise out of the same facts—the alleged deceptive labeling and marketing of Reese's® White—the unjust enrichment claim is duplicative and must be dismissed.  *See Corsello*, 18 N.Y.3d at 790, *see also Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015) (dismissing unjust enrichment claim that was duplicative of breach of warranty and GBL claims); *see also Weisblum*, 2015 WL 738112, at *13 (dismissing unjust enrichment claim that was duplicative of warranty and fraud claims).

**E.    Plaintiff's request for injunctive relief should be dismissed.**

"A plaintiff lacks standing for injunctive relief where the complaint fails to establish a 'real or immediate threat' of injury."  *Izquierdo*, 2016 WL 6459832, at *5.  Where, as here, the claims arise from the purchase of an allegedly mislabeled consumer product, a plaintiff must allege the intent to purchase the product in the future to have standing to seek prospective injunctive relief.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").  Here, Plaintiff has only vaguely alleged the ***possibility*** of purchasing the Product in the future—and that possibility is contingent upon changing the Product's labeling.  *See* Dkt. No. 1, ¶ 60 ("Named Plaintiffs . . . would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.").  This is insufficient to establish future harm.  *See Izquierdo*, 2016 WL 6459832, at *5 (finding a conditional statement regarding intent to purchase in the future insufficient to establish future harm); *see also Nicosia*, 834 F.3d at 239; *Alce v. Wise Foods, Inc.*, No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018).  Plaintiff's

(undefined) request for injunctive relief, *see* Dkt. No. 1 at 16 (Prayer for Relief ¶¶ 2–3) should be dismissed for lack of standing.

## V.   CONCLUSION

As discussed above, Plaintiff has not alleged essential elements of his claims.  Putting aside the failure to allege causation and reliance, Plaintiff's claims under GBL sections 349 and 350 fail because he has not plausibly alleged any facts that would allow the Court to infer that a reasonable consumer would believe Reese's White contains white chocolate.  Plaintiff has also failed to state a claim for fraud and breach of warranty, because, *inter alia,* Plaintiff's conclusory allegations do not meet the level of specificity required by Rule 9(b).  New York law requires dismissal of the unjust enrichment claim, because it is duplicative of Plaintiff's tort and contract claims.  Finally, Plaintiff's request for injunctive relief should be dismissed, as he has not alleged the threat of future harm.  Because Plaintiff cannot cure the many defects in his complaint, Hershey respectfully requests that the Court dismiss this action with prejudice.

DATED:  January 16, 2020

Respectfully submitted,

**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
212.262.6900

By:  _Dennis Hopkins_
      Dennis Hopkins (DH3767)
      DHopkins@perkinscoie.com

*Attorneys for The Hershey Company*

## CERTIFICATE OF SERVICE

I, Dennis Hopkins, declare:

I am a citizen of the United States and employed in New York, New York.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 1155 Avenue of the Americas, 22nd Floor, New York, NY 10036-2711.  On January 16, 2020, I served a copy of the within document(s):

**DEFENDANT THE HERSHEY COMPANY'S MOTION TO DISMISS THE COMPLAINT**

☐   by causing the document(s) listed above to be placed in a sealed envelope with postage thereon fully prepaid, the United States mail at New York, New York addressed as set forth below.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒   by transmitting via electronic transmission from DHopkins@perkinscoie.com the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Spencer Sheehan, Esq.<br>SHEEHAN & ASSOCIATES, P.C.<br>505 Northern Boulevard, Suite 311<br>Great Neck, New York 11021 | *Attorneys for Plaintiffs, Curtis Winston, Jane Doe, and on behalf of all others similarly situated*<br>Telephone:  516.303.0552<br>Email:  Spencer@spencersheehan.com |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 16, 2020, at New York, New York.

_____
Dennis Hopkins

-1-