United States District Court
Eastern District of New York

1:19-cv-03379-KAM-SJB

Curtis Winston, individually and on behalf
of all others similarly situated,

Plaintiff,

- against -

The Hershey Company,

Defendant

**Served on: February 13, 2020**

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Complaint

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

Attorneys for Plaintiff

Table of Contents

Table of Authorities ............................................................................................................. iii

Introduction ....................................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    Legal Standard ......................................................................................................... 1

II.   Plaintiff Plausibly Alleges the Products are an Imitation of White
      Chocolate ................................................................................................................. 5

      A.   Labeling of Imitation Foods ........................................................................... 6

III.  Plaintiff Plausibly Alleges Deception Based on Defendant's
      Labeling and Packaging of the Products ................................................................ 12

      A.   Plaintiff has Alleged Causation ................................................................... 12

IV.   Defendant Errs in Asserting Reliance is Element of NY GBL 350 ...................... 14

      A.   Plaintiff has Alleged an Injury .................................................................... 16

V.    Plaintiff's Express Warranty Claims are Sufficient .............................................. 16

      A.   Labeling Affirmed the Products Were White Chocolate ............................. 17

      B.   Plaintiff Allege Injury Based on Defendant's Breach ................................. 18

      C.   Defendant's Claim of Lack of Pre-Suit Notice is Conclusory and
           Incorrect ...................................................................................................... 19

      D.   Privity is Not Required ................................................................................ 21

      E.   Plaintiff is a Third-Party Beneficiary .......................................................... 21

VI.   The Complaint Satisfies the Heightened Pleading Standard for Fraud ................. 22

VII.  Plaintiff May Plead Unjust Enrichment in the Alternative ................................... 22

VIII. Plaintiff has Standing to Seek Injunctive Relief .................................................. 23

IX.   Plaintiff has Alleged Injury .................................................................................. 25

Conclusion ....................................................................................................................... 25

CONCLUSION ................................................................................................................. 25

i

**Table of Authorities**

**Cases**

*Abraham v. American Home Mortg. Servicing, Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ............................................................. 13, 14

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-0395, 2010 U.S. Dist. LEXIS 73156
  (E.D.N.Y. July 21, 2010) ....................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 1, 2

*Ault v. J.M. Smuckers,*
  No. 13-cv-3409, 2014 WL 1998235
  (May 15, 2014 S.D.N.Y.) ...................................................................................... 18

*Avola v. Louisiana-Pacific Corp.*,
  991 F.Supp.2d 381 (E.D.N.Y. 2013) ................................................................... 17

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
  290 F.3d 476 (2d Cir. 2002) ................................................................................... 2

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................................................... 24

*Belfiore v. Procter & Gamble Co.*,
  No. 14-cv-4090, 311 F.R.D. 29,
  2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) .......................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 1

*Boule v. Hutton,*
  328 F.3d 84 (2d Cir. 2003) ..................................................................................... 3

*Bourbia v. SC Johnson & Son, Inc.*,
  375 F.Supp.3d 454 (S.D.N.Y. 2019) .................................................................... 17

*Burton v. Iyogi, Inc.*,
  No. 13-CV-6926 (DAB), 2015 WL 4385665, (S.D.N.Y. Mar. 16, 2015) .............. 23

*Chen v. Dunkin' Brands, Inc.*,
  No. 1:17-cv-3808
  (E.D.N.Y. Sept. 17, 2018) ...................................................................................... 8

*Clark v. Perfect Bar, LLC*,
   2018 WL 7048788
   (N.D. Cal. Dec. 21, 2018) ................................................................................. 8

*Cohn v. Lionel Corp.*,
   289 N.Y.S.2d 404 (1968) ................................................................................. 23

*Cummings v. FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019) ............................................................ 23

*Dyson v. Avoset Food Corp.*,
   86 Misc. 2d 769, 382 N.Y.S.2d 947
   (New York Supreme Court, Albany 1976) ........................................................ 7

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-cv-2484, 2015 WL 2344134
   (E.D.N.Y. May 14, 2015) ................................................................................. 15

*Falcon v. City University of New York*,
   No. 15-cv-3421 (E.D.N.Y. July 15, 2016) ....................................................... 25

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) .............................................................................. 1

*Famular v. Whirlpool Corp.*,
   No. 16-cv-944, 2017 WL 2470844
   (S.D.N.Y. June 6, 2017) ................................................................................... 21

*Famular v. Whirlpool Corp.*,
   No. 16-cv-944, 2017 WL 2470844
   (S.D.N.Y. Mar. 19, 2019) ................................................................................. 15

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) .............................................................................. 4

*Fogarazzo v. Lehman Bros.*,
   341 F. Supp. 2d 274 (S.D.N.Y.2004) ................................................................ 9

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ................................................................................ 1

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ..................................................................... 24

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F.Supp.3d 467 (S.D.N.Y. 2014) ................................................................... 10

*Gonzalez v. Costco Wholesale Corp.*,
No. 16-cv-2590, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018)............................................ 19

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
774 N.E.2d 1190, 98 N.Y.2d 314 (2002) .............................................................................. 3

*Hanley v. Chicago Title Ins. Co.*,
No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................................ 1

*Hart v. BHH, LLC*,
No. 15-cv-4804, 2017 WL 2912519 (S.D.N.Y. July 7, 2017) ............................................... 17

*Henry v. Daytop Vill., Inc.*,
42 F.3d 89 (2d Cir.1994) ..................................................................................................... 23

*Huang v. iTV Media, Inc.*,
13 F. Supp. 3d 246 (E.D.N.Y. 2014)..................................................................................... 23

*Hubbard v. Gen. Motors Corp.*,
No. 95-cv-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)................................................ 21

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................................................... 10

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
No. 1:14-cv-3722, 2015 WL 4591236 (D.N.J. July 29, 2015)............................................... 20

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................................... 20

*In re MBIA, Inc., Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y.2010) .................................................................................... 9

*In re Rezulin Products Liability Litigation*,
133 F.Supp.2d 272 (S.D.N.Y. 2001) ..................................................................................... 18

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016)..................................................................................... 20

*Jackson-Mau v. Walgreen Co.*,
No. 1:18-cv-4868, 2019 WL 5653757
(E.D.N.Y. Oct. 31, 2019) ...................................................................................................... 24

*Karlin v. IVF Am., Inc., et. al.*,
93 N.Y.2d 282 (1999)............................................................................................................ 3

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012)............................................................................................................ 14

v

*Koenig v. Boulder Brands, Inc.*,
　995 F. Supp. 2d 274 (S.D.N.Y. 2014) ........................................................ 10

*Leider v. Ralfe*,
　387 F. Supp. 2d 283 (S.D.N.Y. 2005) ........................................................ 14

*Lonner v. Simon Prop. Grp., Inc.*,
　866 N.Y.S.2d 239 (App. Div 2008.) .......................................................... 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
　797 F.3d 160 (2d Cir. 2015) ...................................................................... 22

*Mantikas v. Kellogg Company*,
　910 F.3d 633 (2018) .................................................................................... 5

*Mennen Co. v. Gillette Co.*,
　565 F. Supp. 648 (S.D.N.Y. 1983) ............................................................. 3

*Neri v. R.J. Reynolds Tobacco Co.*,
　No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ............... 21

*Orlander v. Staples, Inc.*,
　802 F.3d 289 (2d Cir. 2015) .................................................................. 3, 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
　85 N.Y.2d 20 (1995) .................................................................................... 3

*Paulino v. Conopco, Inc.*,
　No. 14-cv-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............... 19

*Pelman ex rel. Pelman v. McDonald's Corp.*,
　396 F. Supp. 2d 439 (S.D.N.Y. 2005) ...................................................... 14

*Pelman v. McDonald's Corp.*,
　396 F.3d 508 (2d Cir. 2005) ........................................................................ 4

*People v. General Elec. Co.*,
　756 N.Y.S.2d 520 (1st Dep't 2003) ............................................................. 3

*Petrosino v. Stearn's Prod., Inc.*,
　No. 16-cv-7735, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ............... 24

*Quinn v. Walgreen Co.*,
　958 F. Supp. 2d 533 (S.D.N.Y. 2013) ...................................................... 10

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
　11 N.Y. 2d 5 (1962) .................................................................................. 21

*Ross v. Bolton,*
   904 F.2d 819 (2d Cir.1990) ........................................................................ 22

*Segedie v. Hain Celestial Grp., Inc.,*
   No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ................................ 18

*Servedio v. State Farm Ins. Co.,*
   889 F.Supp.2d 450 (E.D.N.Y.2012),
   *aff'd,* 531 F. App'x 110 (2d Cir.2013) ...................................................... 16

*Singleton v. Fifth Generation, Inc.,*
   No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ................................ 19

*Stoltz v. Fage Dairy Processing Indus., S.A.,*
   No. 14-cv-3826, 2015 U.S. Dist. LEXIS 126880
   (E.D.N.Y. Sep. 22, 2015) ...................................................................... 10

*Tomasino v. Estee Lauder Cos., Inc.,*
   No. 13-cv-4692, 2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015) ............................ 15

*United States v. 651 Cases, Etc.,*
   114 F. Supp. 430 (N.D.N.Y. 1953) ............................................................ 6

*Weisblum v. Prophase Labs, Inc.,*
   88 F.Supp.3d 283 (S.D.N.Y. 2015) ........................................................... 21

*Weisman v. LeLandais,*
   532 F.2d 308 (2d Cir. 1976) ................................................................... 1

*Williams v. Calderoni,*
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
   *aff'd, Williams v. Schwartz,* 529 F. App'x 89 (2d Cir. 2013) ...................... 2

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) .................................................................. 8

*Winick Realty Grp. LLC v. Austin & Assocs.,*
   857 N.Y.S.2d 114 (1st Dep't 2008) .......................................................... 23

*Woods v. Maytag Co.,*
   807 F.Supp.2d 112 (E.D.N.Y. 2011) ......................................................... 2

**Statutes**

21 U.S.C. § 343(c) ................................................................................. 5

GBL §§ 349 and 350 ............................................................................... 4

N.Y. U.C.C. § 2-313(1)(a) ............................................................................ 17

N.Y. U.C.C. § 2–313(1)(a) ............................................................................ 18

N.Y. U.C.C. § 2–313(1)(b) ............................................................................ 18

N.Y. U.C.C. § 2-318 ...................................................................................... 22

N.Y. U.C.C. § 2-607 ...................................................................................... 20

N.Y.U.C.C. § 2-313(1)(b) ............................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 2

Federal Rule of Civil Procedure 8(a) ............................................................. 5

Federal Rule of Civil Procedure 9(b) ........................................................... 29

Federal Rules of Civil Procedure 8(e)(2) ..................................................... 31

**Regulations**

21 C.F.R. § 101.3(b) ..................................................................................... 11

21 C.F.R. § 101.3(e) ....................................................................................... 8

21 C.F.R. § 101.3(e)(1) ................................................................................... 7

21 C.F.R. § 102.5(a) ..................................................................................... 11

**Introduction**

Plaintiff submits this memorandum of law in opposition to defendant's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Def. Notice of Motion and Memorandum of Law in Support ("Def. MOL"). For the reasons below, the motion should be denied it in its entirety.

**ARGUMENT**

**I.   Legal Standard**

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

A.   Factual Allegations Should be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

improbable, and 'that a recovery is very remote and unlikely.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

    B.   <u>Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled</u>

Plaintiff needs only to assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiff need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

    C.   <u>Defendant's Labeling Should be Viewed in Context</u>

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal citation omitted).

Thus, to prevail on their claims, Plaintiff need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also People v. General Elec. Co.*, 756 N.Y.S.2d 520 (1st Dep't 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, there is no requirement that plaintiff prove that defendant's practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant's deceptive practices. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d at 532-33; *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983).

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).  These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc., et. al.,* 93 N.Y.2d 282, 290 (1999). "The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* at 291 (alteration in original) (quotation marks and citation omitted). Moreover, a plaintiff is not required to meet the enhanced pleading requirements of Rule 9(b) for GBL §§

349 and 350 claims but rather need only meet the Rule 8(a) standard. *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Courts within this state have consistently held that "issues of deceptiveness and good faith are not resolved as a matter of law" through a fine print disclaimer. *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001) (credit card agreement where the disclaimer was present "in the small print footnote to the solicitation offer" is insufficient to defeat a claim of deception).

Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

""To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Though defendant asserts the issues before the Court are unambiguous, a closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial") citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (magazine sweepstakes mailer was not deceptive where "promotions expressly and repeatedly state the conditions which must be met in order to win" and such disclaimer "appears immediately next to the representations it qualifies"); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

Moreover, technical accuracy is not a defense to a claim of misleading labelling. *Mantikas*

*v. Kellogg Company*, 910 F.3d 633 (2018). Plaintiff's detailed allegations regarding Defendant's deceptive practices adequately pleads claims under New York General Business Law §§349 and 350; breach of express warranty; fraud; and unjust enrichment. Defendant's motion to dismiss the COMPLAINT should be denied in its entirety.[1]

Defendant concedes that Plaintiff alleges a consumer-oriented conduct, but argues that Plaintiff fails to allege injury or a materially misleading conduct. Defendant simply ignores the allegations supporting Plaintiff's GBL claims.

## II.     Plaintiff Plausibly Alleges the Products are an Imitation of White Chocolate

Under 21 U.S.C. § 343(c), a food is misbranded if it "is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." *See* 21 C.F.R. § 101.3(e)(1) (defining an imitation food as one that "is a substitute for and resembles another food but is nutritionally inferior to that food.").

Plaintiff has alleged the Products are a substitute for real white chocolate and resemble white chocolate. Complaint, ¶¶ 3-4.   However, the Products are nutritionally inferior to the food they attempt to substitute for "because the most-valued component – cacao fat – was substituted for lesser quality ingredients – palm, shea and sunflower oils." Complaint.

Cocoa butter contains less saturated fat than the vegetable oil alternatives used in the Products.  Additionally, the saturated fat in cocoa butter is mainly stearic acid which does not have the negative effect of increasing cholesterol compared to other saturated fats.  Cocoa butter also

[1] Plaintiff withdraws his claims of negligent misrepresentation and breach of implied warranty. Thus, the motion to dismiss those claims can be denied as moot.

5

contains "good" fats such as monosaturated fat and palmitic fatty acid, elements that are noticeably absent from the vegetable oils – which contain harmful and prohibited trans-fats – used in its place.

A.   Labeling of Imitation Foods

A substitute food is one that resembles another food, in the case of a "dairy spread" consisting of butter and vegetable oils vis-à-vis butter.  To prevent the gradual deterioration of the American diet, Congress required that where a substitute food is nutritionally inferior to its counterpart, it is required to be identified with the word "imitation" immediately following the name of the food.  21 C.F.R. § 101.3(e).

Even if the Products had a "common or usual name" – which they do not – it would nonetheless still be an imitation because it is "nutritionally inferior to the food for which it substitutes and which it resembles." 21 C.F.R. § 101.3(e)(2)(i); 21 C.F.R. § 101.3(e)(2)(ii).

Taking defendant at its word that it does not purport to pass this "white" confection off as white chocolate, this is insufficient to "act as a warning or as a snare for the unwary purchaser." *United States v. 651 Cases, Etc.*, 114 F. Supp. 430, 433 (N.D.N.Y. 1953) (product named "Chil-Zert" accompanied by the statement "not an ice cream" but without the required term "imitation" insufficient to escape compliance with statutory requirements enacted to prevent consumer deception).

Similar to the imitation ice cream in Chil-Zert, the Products here substitute a cheaper ingredient – palm oil for cacao fat. *651 Cases, Etc.*, 114 F. Supp. at 432-33 (noting the composition of "Chil-Zert" "differs only from ice cream in the substitution of a cheaper ingredient; namely, vegetable oil in place of milk products. It is, therefore, something less than the genuine article chocolate ice cream. It is inescapable that the ordinary understanding of English speech would denominate it as an imitation of ice cream.").

6

Merely because the Products have an ingredient list and "white chocolate" is not specified in the small print on the ingredient list, consumers can be and still are, deceived.  Reasonable, even highly sophisticated consumers, may not be aware of the nutritionally harmful properties of hydrogenated vegetable oils when compared to the non-hydrogenated cacao fat.  For this reason, among others, the absence of the term "imitation" on the front label, is misleading to consumers. *Dyson v. Avoset Food Corp.*, 86 Misc. 2d 769, 770, 382 N.Y.S.2d 947 (New York Supreme Court, Albany 1976) ("If a food product "imitates" another, that is, if one food copies, or is made to resemble another in appearance, taste, color, texture and in other qualities compositely considered and is cheaper but of lesser quality than the original because of the use of less expensive and inferior ingredients and at the same time is calculated to deceive the buyer by making him believe he has purchased a product as good as the original for a cheaper price, then such imitative food should be required to bear the word "imitation".").

Though defendant may point to the ingredient list in response to the complaint's allegations that reasonable consumers believe the Product is white chocolate, it was this type of deception which prompted defendant to seek establishment of a standard of identity for "white chocolate" in 1989.  Exhibit "A," Letter from The Hershey Corporation to FDA, August 8, 1989, Docket No. 86P-0297/CP (Proposal to Amend Standards of Identity for Cacao Products).

Then, defendant correctly noted that:

> the use of fanciful names obscures the true nature of the product.  Consumers who might expect to be purchasing a "chocolate" or "white chocolate" product may, in fact, be purchasing a coating-type product manufactured with cheaper ingredients made from other oils and/or fats and which contain little or no cacao ingredients.

Exhibit "A" at p. 2.

In the present instance, defendant eschews fanciful names and lets the consumer draw their own conclusions based on the all white package, the absence of any modifying term such as "white crème" or an orange background with a touch of beige or white and its physical positioning adjacent to the milk chocolate variety it sells.

Defendant's sole disclaimer is the fine print of the ingredient list.  Def. Mem. At 8 citing *Workman v. Plum Inc.*, 141 F.Supp.3d 1032, 1035 (N.D. Cal. 2015) ("any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.").

*Workman* is against the weight of authority in this district, given the Second Circuit's decision in *Mantikas*, 910 F.3d at 637 ("we cannot conclude that these disclosures on the side of the box render Plaintiff' allegations of deception implausible.") citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Ackerman v. Coca-Cola Co*., No. 09-cv-0395, 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing.").

Defendant's other authorities in support of its position are deficient.  *Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018); *Chen v. Dunkin' Brands, Inc.*, No. 1:17-cv-3808, Dkt. No. 23 (E.D.N.Y. Sept. 17, 2018).

In *Clark*, the key factor was that defendant, "at all material times in question, remained in compliance with all sugar-disclosure regulations," despite that plaintiff's allegation of failing to disclose its sugar content. Here, the Products are not in compliance with the relevant regulations

because their front label lacks a common or usual name, which is required to "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  21 C.F.R. § 101.3(b) (requiring a "statement of identity" which would either be "the common or usual name of the food" or "An appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food."); *see also* 21 C.F.R. § 102.5(a) ("The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.").  The purpose of a product having a clear unambiguous name on the front panel is so consumers are not required to read the ingredient list fine print.

In *Chen*, the Court found that the term "Angus Steak" to describe breakfast sandwiches was not misleading because it does not cause a consumer "to believe that the meat patty contains only Angus beef," but that they contain "just some "Angus beef."  In contrast, defendant's representations and omissions cause consumers to expect a product containing at least *some* white chocolate, which they do not receive.

Defendant avers that "the packaging does not include any statement describing the Product as 'white chocolate.'"  However, this ignores that a "statement can be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact," which is the *de minimis* amount of cacao fat in the Products as opposed to the lower quality vegetable oils.  *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 578 (S.D.N.Y.2010); *Fogarazzo v. Lehman Bros.*, 341 F. Supp. 2d 274, 294 (S.D.N.Y.2004) ("A statement can also be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact.").

At best, authorities within this Circuit hold that "the presence of a disclaimer or other clarifying language *may* defeat a claim of deception." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 479-80 (S.D.N.Y. 2014) (emphasis in original); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at *18 (E.D.N.Y. Sept. 24, 2014) (considering font size, placement, emphasis and consistency when evaluating whether a disclaimer is sufficient to prevent a reasonable consumer from being misled); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826, 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement."); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled."); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis.") *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact.")

While defendant seeks dismissal based on the absence of "white chocolate" on the ingredient list, this is also in contrast to its position at the time it was seeking to establish this food's standard of identity.  According to defendant's petition,

10

> Consumers of "white chocolate" products should not have to resort to looking at technical ingredient statements to determine if such products contain real cacao ingredients or whether they are manufactured using cheaper ingredients from other sources. Products which are commonly referred to as "white chocolate" should be required to contain a minimum level of cacao ingredients. Adoption of the proposed standard will eliminate the need for fanciful name designations which reveal little about the true nature of the product. In addition, the current level of consumer confusion and misunderstanding will be diminished.

Exhibit "A," p. 3.

To be clear, all foods that resemble or substitute for other foods are not "imitations." Such a reading of the requirements would result in disarray and illogical outcomes. Defendant does not need to explicitly identify the Products as "white chocolate" for consumers to receive that impression. Defendant knows consumers will be misled by the failure to clearly identify the Products as an "imitation."

When defendant sought to establish a standard of identity for white chocolate, it conducted a marketing survey "to determine the most common name used by adult candy consumers when shown a variety of confection products, including a generic white confection bar." Exhibit "B," "White Chocolate" Consumer Survey.

More than 60% of respondents used the term "white chocolate" to describe a white confection bar. Another 10% associated the white confection bar with "chocolate." Exhibit "B," ("Based on these results, it appears that the majority of candy consumers tend to identify white confection as either 'white chocolate' specifically or as some variety of chocolate.").

When the results of defendant's survey are coupled with the association of the Reeses brand with chocolate, the Product's placement amongst chocolate instead of general confections and the adjacent milk chocolate variety, it is no wonder that plaintiff and reasonable consumers are deceived.

In its argument, defendant claims the Products do not require to comply with federal regulations that its front label have a truthful and non-misleading name, and asserts all consumers must review the ingredient list.

### III.   Plaintiff Plausibly Alleges Deception Based on Defendant's Labeling and Packaging of the Products

#### A.   Plaintiff has Alleged Causation

Defendant contends the "Plaintiff alleges no facts regarding his exposure to the allegedly misleading representations."  MOL at 10; *Dash v. Seagate Technology (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) ("To properly allege causation [under the General Business Law], a plaintiff must state in his complaint that *he has seen the misleading statements* of which he complains before [coming] into possession of the products he purchased." citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.")

In contrast to defendant's authorities, "Plaintiff describes in particular the allegedly misleading advertising and other statements, then alleges that" "Named Plaintiff and Jane Doe Plaintiff purchased the Products based upon the representations on the packaging." Complaint, ¶ 59. *Goldemberg*, 8 F. Supp. 3d at 480 ("The reasonable inference to be drawn from these allegations is that Plaintiff saw the Aveeno website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question. Accordingly, causation is sufficiently pled.") (citation omitted).

The issues in this action are admittedly more modest than alleging bank fraud, "unhealthy" Happy Meals and dissemination of junk mail.  Defendant cannot credibly dispute that plaintiff

Curtis Winston is a "Named Plaintiff" and that the complaint states he "purchased the Products based upon the representations on the packaging."

Defendant takes issue with plaintiff's brevity which intentionally does not not repeat the entirety of the factual allegations in the "Parties" section of the complaint.  Of course, abiding by defendant's advice would be counter to plaintiff's requirement that a complaint contain a short and plain statement of the facts entitling him to relief.

In contrast to defendant's authorities, the specific representations were those "on the packaging," their promotion "as 'white' chocolate versions of the standard chocolate product types by defendant's collective and joint promotion of the white variety with its milk and dark chocolate counterparts" and the absence of "any modifying or descriptive terms such as "[White] Crème," "[White] Confectionary Coating" or "[White] Compound Coating" which would clarify ambiguity or misimpression."  Complaint, ¶¶ 9-11.

According to defendant, plaintiff picked up the item from a store shelf and failed to notice anything about it, such as the brand name, "White" and the absence of any disclaimer informing him it was not white chocolate.  This scenario, to take a product from a shelf and *not* observe the packaging, as plaintiff did here is not plausible for anyone who is not sight-impaired.  *Compare with Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2004) (finding no causation where plaintiff alleged the misrepresentations part of defendant's "marketing campaign," "press releases and other forms of advertisements that its new product was highly reliable.").

Defendant's authorities are inapposite for various reasons.  First, they involve broad, sprawling "conspiracy" theories not based on any single representation.  *Abraham v. American Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 226 (E.D.N.Y. 2013) (dismissing plaintiffs' claims that "big banks" and mortgage companies plotted to steal their homes); *Pelman ex rel.*

*Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 442 (S.D.N.Y. 2005) (dismissing case which alleged McDonald's falsely advertised that its "food products were nutritionally beneficial and part of a healthy lifestyle if consumed daily").

In *Abraham*, the three hundred plaintiffs made "only general allegations about disclosures to all Plaintiff" instead of "any allegations about the specific disclosures Ms. Abraham did or did not receive.") *Abraham v. American Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 226 (E.D.N.Y. 2013). In *Pelman ex rel. Pelman*, 396 F. Supp. 2d at 445 (requiring plaintiff to identify the particular "nutritional schemes alleged to have injured the plaintiffs").

Notwithstanding the scope of such broad allegations, the court ruled causation was not established because of a failure to allege "the majority of Defendants engaged in any activities declared unlawful by GBL § 349 *in New York*." 947 F. Supp. 2d 222, 226 (E.D.N.Y. 2013) (emphasis in original). Second, defendant's authorities are

In *Wright v. Publishers Clearing House, Inc.*, the court found causation lacking because the only "harm" alleged by plaintiffs was the unlawful mailing of letters in violation of federal statute. 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019) (rejecting plaintiff's attempt to impose "strict liability" on a defendant who breached federal mailing statute absent any injury).

### IV.   Defendant Errs in Asserting Reliance is Element of NY GBL 350

Defendant claims that the GBL Section 350 claims fail due to the failure to plead reliance. Def. Memo at 13 citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005). However, neither Section 349 nor 350 "requires proof of reliance." See *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable

reliance by the plaintiff is not an element of the statutory claim."); *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 WL 2470844 at *7 (S.D.N.Y. Mar. 19, 2019).

Nevertheless, defendant claims that despite the New York Court of Appeals statement that reliance is not an element under GBL 350, the State's highest court had not "intended to overrule the settled body of New York precedent requiring reliance under GBL section 350." Def. Memo at 13. In support, defendant cites subsequent cases where other courts failed to follow the law of this State. *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484, 2015 WL 2344134 at *11 (E.D.N.Y. May 14, 2015) ("To state a claim for the violation of section 350 . . . a plaintiff must plead reliance on the misleading advertising at the time of purchase"); *Tomasino v. Estee Lauder Cos., Inc.*, No. 13-cv-4692, 2015 WL 1470177 at *4 (E.D.N.Y. Mar. 31, 2015) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance.").

Even accepting defendant's failure to follow the Court of Appeals, the complaint pleads reliance. Complaint at ¶ 59 ("Named Plaintiff and Jane Doe Plaintiff purchased the Products based upon the representations on the packaging."), ¶ 77 ("The representations and omissions were relied on by Named Plaintiff"). Defendant fails to recognize that plaintiff Curtis Winston *is* a "Named Plaintiff." Similar to defendant's allegations that plaintiff Winston failed to view the misleading representations, it is just as implausible he could not have relied on those same representations. In the context of consumer goods sold in a store, the representations are physically a part of the packaging. Moreover, the challenged representations were not on a side panel but consisted of the entire label.

A.   Plaintiff has Alleged an Injury

New York law states that plaintiffs can establish injury by alleging that they paid a premium for a product, and the complaint unquestionably alleges this. Specifically, the Complaint contains allegations that Defendant charged, and the New York Plaintiff paid, a premium for the Products. *See*, *e.g.*, Complaint ¶77 ("Named Plaintiff and Jane Doe Plaintiff and class members, who paid more than they would have, causing damages").

This is sufficient for a damages claim under New York's consumer protection law. *Orlander v. Staples, Inc.*, 802 F.3d at 302 (citing *Koenig v. Boulder Brands, Inc.,* 995 F.Supp.2d 274, 288–89 (S.D.N.Y.2014)).

*Koenig* is on point here. In *Koenig*, the plaintiffs claimed that the defendant deceived consumers by misrepresenting the amount of fat in its Smart Balance milk. The defendant argued that plaintiffs failed to plead sufficient injury for a claim under GBL§349. The court rejected the argument:

> Here, Plaintiff claim that, but for Defendants' "unfair and deceptive practices," they – and the putative class – would not have purchased, or paid a price premium for, Smart Balance. . . . Accordingly, the Court finds that Plaintiff have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason.

*Koenig*, 995 F.Supp.2d at 288–89 (capitalization in original; internal citations omitted); *see also Servedio v. State Farm Ins. Co.,* 889 F.Supp.2d 450, 453 (E.D.N.Y.2012) ("[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement."), *aff'd,* 531 F. App'x 110 (2d Cir.2013).

## V.   Plaintiff's Express Warranty Claims are Sufficient

The complaint states a claim for breach of express warranty because defendant's labeling

of the Products constitutes a "description of the goods." N.Y. U.C.C. § 2-313 (1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."); see *Hart v. BHH, LLC*, No. 15-cv-4804, 2017 WL 2912519, at *4 (S.D.N.Y. July 7, 2017) (it is "well-settled law that a description of goods at issue can create an express warranty so long as it was part of the basis of the parties' bargain"); *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); N.Y.U.C.C. § 2-313(1)(a)-(b) ("affirmation of fact or promise" or "description of the goods" which is "made part of the basis of the bargain creates an express warranty").

A.     Labeling Affirmed the Products Were White Chocolate

The description of the Products through their labeling and packaging – ivory white – are clearly are those which the UCC intended to be considered express warranties. *Bourbia v. SC Johnson & Son, Inc.*, 375 F.Supp.3d 454, 464 (S.D.N.Y. 2019) ("product descriptions such as those on Off! Clean Feel's label are considered express warranties under New York's Uniform Commercial Code, and Plaintiff alleged that the label statements were part of the basis of the bargain.").

Defendant next argues that "[e]ven if the Court were to consider the substance of Plaintiff' express warranty allegations, they fail to plausibly allege a cognizable claim." Def. Br. at 14. Under Section 2–313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2–313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2–313(1)(b). Plaintiff meets these

pleading requirements. Specifically, Plaintiff alleges that Defendant represented that the Products

were a white version of the standard milk chocolate variety.

Defendant now argues that because the Product's label does not make an affirmation of

fact or promise, that Plaintiff's allegations fail to give rise to a plausible express warranty claim.

Defendant's arguments amount to nothing more than a factual challenge to what it warranted and

whether it breached those warranties. Such questions cannot be resolved in its favor at the pleading

stage. "[W]hat a reasonable consumer's interpretation might be is a matter of fact which is not

appropriate for decision on a motion to dismiss. *Ault v. J.M. Smuckers,* No. 13-cv-3409, 2014 WL

1998235 at *6 (May 15, 2014 S.D.N.Y.), at *6 (finding that the plaintiff alleged actionable

warranty where "it cannot be said that a reasonable consumer cannot interpret 'All Natural' as a

factual claim about Crisco oil").

Plaintiff satisfies the "basis of the bargain" requirement for an express warranty claim.

Defendant's description of the goods were made "during the bargain," *viz*, appearing on the

Products' front labels, creating a presumption of reliance.  *In re Rezulin Products Liability

Litigation*, 133 F.Supp.2d 272, 291 (S.D.N.Y. 2001) (Reliance presumed when a seller makes

affirmations about the product "during the bargain.").

   B.   <u>Plaintiff Allege Injury Based on Defendant's Breach</u>

Due to the "representations and omissions," plaintiffs "paid more than they would have." .

Plaintiff have clearly suffered and alleged an injury under the relevant standards.  *Segedie v. Hain

Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Plaintiff

have ... adequately alleged injury [under NYGBL §§ 349 and 350] by claiming that they paid a

price premium that they would not have paid if the products were not labeled `natural' or `all

natural.'"); *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590, 2018 WL 4783962, at *7

(E.D.N.Y. Sept. 29, 2018) (adequately pleaded economic injury because "had Plaintiff known the "true facts," namely that the Products allegedly contained unnatural, harmful, and toxic chemical ingredients, she contends that she "would not have purchased, or would have purchased less of, or would have paid less for, the Products.").

        C.    Defendant's Claim of Lack of Pre-Suit Notice is Conclusory and Incorrect

Defendant contends, without even a citation to statutory authority, that the warranty claims should be dismissed for lack of pre-suit notice.  N.Y. U.C.C. § 2-607(3)(a) ("Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); See *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018) (dismissing breach of express warranty claim for lack of pre-suit notice); *Paulino v. Conopco, Inc.*, No. 14-cv-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

Defendant's argument is without merit. The complaint properly alleges pre-litigation notice. Specifically, Plaintiff alleges that "other plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed" notice.  Complaint.

Additionally, Plaintiff plausibly alleges that Defendant had notice of its breach due to Defendant's actual knowledge that the Products were not white chocolate. At the pleading stage,

these allegations are sufficient, and courts do not require plaintiffs to provide specific facts regarding the notice each named plaintiff provided.

For example, in *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011), the court "decline[d] to require Plaintiff to provide more specific facts regarding notice at this time because pre-litigation notice is not strictly required under the laws of a number of states." The court explained:

> A significant body of case law from around the country holds that the reasonable notice requirements of UCC § 2–607(3)(a) should be judged under a relaxed standard when the suit is brought by a retail consumer of the product." . . . In New York, the notice requirement does not even apply to cases involving goods sold for human consumption. *Fischer v. Mead Johnson Lab.,* 41 A.D.2d 737, 341 N.Y.S.2d 257 (N.Y.App.Div.1973). Moreover, under the laws of a number of states, the filing of a complaint can serve as notice.

> *Id.* (internal quotation and edits omitted).

Similarly, in *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016), the court denied the defendant's motion to dismiss the breach of warranty claims based on lack of pre-suit notice in a class action case with plaintiffs from multiple states because "direct notice includes when the seller had actual knowledge of the defect of the particular product." The court further reasoned that the issue of notice in many states is a question of fact for the jury. According, the court found that "the allegations presented are sufficient" and noted that "an exhaustive review of the factual sufficiency of each Plaintiff' allegations regarding notice under each applicable state law is not appropriate at this stage." *In re Rust-Oleum*, 155 F. Supp. 3d at 801–02; *see also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-cv-3722, 2015 WL 4591236, at *28 (D.N.J. July 29, 2015) (declining to dismiss claims on grounds of pre-suit notice deficiency and declining "to exhaustively review the sufficiency of Plaintiff' allegations regarding notice under each applicable state law").

Defendant's argument also fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000).

Courts in this State have liberally applied the notice requirements for express warranty claims and find this to be a question of fact not susceptible to resolution on a motion to dismiss. *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996). ("[T]he sufficiency and timeliness of the notice is generally a question for the jury.").  At this juncture, this Court similarly should deny Defendant's motion to dismiss the breach of express warranty claim for lack of pre-suit notice.

### D.   Privity is Not Required

Defendant cannot challenge the express warranty claims based on a lack of privity because "New York law does not require privity when a breach of express warranty is "based on misrepresentations contained in `public advertising or sales literature.'" *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 WL 2470844, at *4 (S.D.N.Y. June 6, 2017) quoting *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 287, 295 (S.D.N.Y. 2015) (privity is not required where a plaintiff claims defendant misrepresented aspects of its products in "public advertising or sales literature."); *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y. 2d 5 at 11, 13 (1962) (privity is not compatible with "present-day commercial practices").

### E.   Plaintiff is a Third-Party Beneficiary

Privity is not required for plaintiff's express warranty claims because the UCC expanded the affected parties who could recover if they are those who could "reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty."  N.Y. U.C.C. § 2-318 ("Third Party Beneficiaries of Warranties Express or Implied.").  Here, plaintiff and

consumers are the intended third-party beneficiaries of the express warranties, as they, not the retail stores, are the end-users.

**VI.    The Complaint Satisfies the Heightened Pleading Standard for Fraud**

Defendant argues that Plaintiff's fraud allegations fail to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Def. Br. at 16. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation omitted). "Rule 9(b) requires only that Plaintiff plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiff to plead facts that make fraud more probable than other explanations." *Id.* at 175.

Here, Plaintiff has identified The Hershey Company as the speaker of the representations and that "Named Plaintiff and Jane Doe Plaintiff purchased the Products based on the representations on the packaging."

Finally, Plaintiff explains why the statements are fraudulent – because the Products lack the more valuable cacao fat ingredients and instead contains lower quality vegetable oils.

The allegations thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

**VII.   Plaintiff May Plead Unjust Enrichment in the Alternative**

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of

consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994). To the extent that this Court finds that Plaintiff does not state claims pursuant to the GBL, fraud, or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019) ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred."). Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

## VIII.  Plaintiff has Standing to Seek Injunctive Relief

Plaintiff has standing to pursue injunctive relief because Plaintiff's inability to rely on the Products' labels in the future constitutes a constitutional injury and imminent threat of future harm. Specifically, Plaintiff alleges that he would buy the Products in the future "if there were assurances that the Products' representations were no longer misleading." COMPLAINT ¶ 182. This is sufficient to establish standing.

In *Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735, 2018 WL 1614349 at *6 (S.D.N.Y. Mar. 30, 2018), the court held that "a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in the future." The court continued, "'if magic words are required,' a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." *Id.*

Recently in *Jackson-Mau v. Walgreen Co.*, No. 1:18-cv-4868, 2019 WL 5653757, at *3 (E.D.N.Y. Oct. 31, 2019), the court likewise found that plaintiff could seek injunctive relief because her complaint stated that she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *See also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Many courts have concluded that the inability to rely on the labels in the future, as alleged in the complaint, constitutes a threat of harm and to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013). Thus, this Court should permit Plaintiff to seek injunctive relief and allow him to remedy misconduct to the benefit of all consumers.

## IX.   Plaintiff has Alleged Injury

Defendant claims that Plaintiff has failed to allege that she suffered any injury. Defendant is wrong. New York law states that plaintiffs can establish injury by alleging that they paid a premium for a product, and the complaint unquestionably alleges this. Specifically, the Complaint contains allegations that Defendant charged, and the New York Plaintiff paid, a premium for the Products. This is sufficient for a damages claim under New York's consumer protection law. *Orlander v. Staples, Inc.*, 802 F.3d at 302 (citing *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288–89 (S.D.N.Y.2014)) (but for Defendant's "unfair and deceptive practices," they – and the putative class – would not have purchased, or paid a price premium for, Smart Balance. . Accordingly, the Court finds that Plaintiff have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason.").

### Conclusion

Courts have "refused to consider arguments that could have been made in an original motion to dismiss that were re-asserted in a motion to dismiss an amended complaint or in opposition to the filing of an amended complaint." *Falcon v. City University of New York*, No. 15-cv-3421 (E.D.N.Y. July 15, 2016).

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss the COMPLAINT.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:   February 13, 2020

Respectfully submitted,

Sheehan & Associates, P.C.

/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03379-KAM-SJB
United States District Court
Eastern District of New York

Curtis Winston, individually and on behalf of all others similarly situated,

                    Plaintiff,


          -against-


The Hershey Company

                    Defendant

Plaintiff's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss the Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

February 13, 2020                                        /s/ Spencer Sheehan
                                                         Spencer Sheehan

EXHIBIT "A"

**Hershey Foods**

Hershey Foods Corporation
Corporate Headquarters
Hershey, Pennsylvania 17033-0810
Phone: (717) 534-5724 Telex: 6711079

**BARRY L. ZOUMAS, Ph.D.**
Vice President, Science and Technology

August 8, 1989

Dockets Management Branch
FHA-305
Food and Drug Administration
Room 4-62
5600 Fishers Lane
Rockville, Maryland  20857

> Re:  Docket No. 86P-0297/CP (Proposal to Amend Standards of Identity) – Cacao Products

Dear Sir:

Hershey Foods Corporation is a major chocolate and confectionery manufacturer in the United States with world-wide distribution of its product lines.

As the largest chocolate manufacturer in the United States, Hershey has a keen interest in ensuring that the standards of identity for cacao products reflect current social, economic and technological circumstances and provide a flexible guidepost for future development of the industry nationally and internationally.  It is with this in mind that we would like to submit the following comments relative to the Food and Drug Administration's proposal to amend the standards of identity for cacao products which was published on January 25, 1989 (54 Fed. Reg. 3615).

In this era of technological innovation, many have viewed food standards as a factor which limits the ability of food manufacturers to innovate in areas where, but for such standards, consumers might be expected to benefit through the availability of a wider variety of food products.  The National Research Council for example, in its 1988 report "DESIGNING FOODS", criticized food standards generally as being too restrictive and inflexible. It is also recognized, however, that food standards have been an effective means for ensuring consumer health and safety and for preventing economic adulteration.  Such standards have been and are useful in promoting public confidence in the food supply by preventing substitution of cheaper food ingredients for more expensive ingredients that consumers expect to be present in a food product.  With these factors in mind, we believe it is appropriate that the current standards of identity for cacao products be amended to include a standard for "white chocolate."  A copy of the standard which we propose for addition to the regulation is attached to this letter as Exhibit A.

EXHIBIT B

The justification supporting adoption of this new standard is essentially two-fold:

(1)  In this unique instance, we believe that the absence of a standard of identity for white chocolate has proven to be a limiting factor in terms of the introduction of new products to meet consumer demand; and

(2)  We believe that there exists a genuine likelihood of consumer confusion over the content of products which are often referred to informally as white chocolate but which may or may not contain any cacao derived ingredients.

There is no present standard of identity for "white chocolate." Currently, virtually all uses of the term "white chocolate" would arguably be prohibited by the current and proposed standards for "chocolate," which prescribes the presence of ground cacao nibs.  This restrictive requirement has acted as a practical deterrent to companies developing and marketing "white chocolate" products in the United States.  When such products have been introduced and marketed in the U.S., companies have had to resort to labeling such products with fanciful names to avoid the standardized labeling issues. Exhibit B contains copies of various labels for products that are or have been marketed in the United States and which exemplify this fact.  Note that in at least one of these examples, the distributor has referred to the product as "white chocolate."  Another example of the common use of this term in association with this type of product is found in the article in Exhibit C which appeared in January, 1989 in the Springfield, Illinois State Journal Register.  Note, in particular, the consumer's quandary that is referenced in the article that "shoppers searching for [white chocolate] will find it only under an alias."  In many cases, the use of fanciful names obscures the true nature of the product.  Consumers who might expect to be purchasing a "chocolate" or "white chocolate" product may, in fact, be purchasing a coating-type product manufactured with cheaper ingredients made from other oils and/or fats and which contains little or no cacao ingredients.

In contrast, in other countries, where a standard of identity for "white chocolate" exists, and where a minimum amount of cocoa butter is required by law, consumers have available to them a variety of easily recognizable products.  Exhibit D contains copies of labels from several of these foreign products.  Consumers in such countries are better able to evaluate the quality and value of the products they purchase without having to resort to analysis of ingredient statements.

Many countries that have adopted standards for cacao products have also recognized and established a standard for "white chocolate."  These include Australia, Austria, Belgium, Denmark, France, Ireland, Italy, Luxemburg, Netherlands, Spain, Switzerland, United Kingdom and West Germany.

"White Chocolate" has been defined by the European Economic Community ("EEC") Directive 75/155/EEC as:

"the product free of colouring matters, obtained from cocoa butter, sucrose and from milk or solids obtained by partially or totally dehydrating whole milk or partially or wholly skimmed milk, and possibly, from cream, partially or wholly dehydrated cream, butter or butter fat; it shall have the following characteristics:

| | |
|---|---|
| – cocoa butter | not less than 20% |
| – total dry milk solids derived from ingredients listed above | not less than 14% |
| – butter fat | not less than 3.5% |
| – sucrose | not more than 55% |

Adoption of the standard as proposed would result in greater consistency in international regulation of cacao products while at the same time ensuring that consumers are buying and consuming "the real thing." Such action would also be consistent with Commissioner Young's stated intention of seeking harmonization of U.S. standards with those of the European community in anticipation of 1992. It might also be expected that a consistent standard would enhance American manufacturers' ability to compete in world markets.

A white chocolate standard as proposed will also tend to promote consumer confidence in the food supply by establishing a readily understandable product identity for a class of products that are becoming more popular with consumers in the U.S. Since 1987, at least 47 new "white chocolate" confections have been introduced worldwide. At least 18 such products have been introduced in the United States. These figures do not include product applications in the traditional ice cream and dessert categories. Consumers of "white chocolate" products should not have to resort to looking at technical ingredient statements to determine if such products contain real cacao ingredients or whether they are manufactured using cheaper ingredients from other sources. Products which are commonly referred to as "white chocolate" should be required to contain a minimum level of cacao ingredients. Adoption of the proposed standard will eliminate the need for fanciful name designations which reveal little about the true nature of the product. In addition, the current level of consumer confusion and misunderstanding will be diminished.

The proposed standard is also in line with the National Research Council's recent suggestions for improving food standards generally wherein the Council recommended, in part, that food standards be made consistent and more flexible. The ingredient requirements being proposed are those which we believe are minimally necessary to maintain the characteristics which consumers fairly expect from "white chocolate." A wide variety of optional and safe dairy ingredients, emulsifiers, flavorings and antioxidants would be permitted. In this respect, this proposed standard would be consistent with

the approach suggested by FDA in the pending proposal to amend the standards for cacao products.  More importantly, the flexibility that is built into this proposed standard will allow manufacturers to develop and market a variety of "white chocolate" products that are currently in demand by consumers.

For the reasons stated above, we request that FDA amend the current food standards governing cacao products to include a new standard for "white chocolate" as proposed herein.  Thank you.

Sincerely,

Barry L. Zoumas

BLZ/sf

attachments

EXHIBIT "B"

"WHITE CHOCOLATE" CONSUMER SURVEY

## Objective

A marketing survey was conducted in February, 1990 to determine the most common name used by adult candy consumers when shown a variety of confection products, including a generic white confection bar.

## Methodology

o   Personal interviews were conducted with 216 adults who eat candy regularly

o   Sample was balanced by gender and geographic region (four dispersed locations--Chicago, Denver, Philadelphia, and Richmond)

o   Samples were presented to consumers in a balanced order

o   After an introductory background statement on how people use different names for the same product, respondents were shown a product and asked what they would call it

o   Procedure was repeated for two or more products--jelly beans, lollipops, and a generic white confection bar

## Summary of Results

o   Over 61% of respondents used the term "white chocolate" in describing the white confection bar they were shown (white chocolate, white block chocolate, white chocolate squares, white chocolate bar, white milk chocolate)

o   An additional 10% indicated association of the product to chocolate in their responses (chocolate, Hershey/Hershey Bar, vanilla chocolate, etc.)

## Conclusion

Based on these results, it appears that the majority of candy consumers tend to identify white confection as either "white chocolate" specifically or as some variety of chocolate.

EXHIBIT E

|  | % |
|---|---|
| White chocolate/white block chocolate/<br>  white chocolate squares/white chocolate bar | 58.8 |
| White milk chocolate | 2.3 |
| | |
| White Hershey | 0.5 |
| White Alpine | 0.9 |
| Hershey/Hershey Bar | 2.3 |
| Chocolate/chocolate squares/chocolate bar | 4.2 |
| Chocolate w/filling | 0.5 |
| Vanilla chocolate | 0.5 |
| Bitter chocolate | 0.5 |
| Bleached chocolate | 0.5 |
| | |
| White fudge/vanilla fudge | 4.2 |
| Fudge (non-specific) | 4.2 |
| White candy/vanilla candy | 1.9 |
| White Oak | 0.5 |
| Butter candy/butter cream | 2.3 |
| Candy bar/candy squares/candy blocks | 4.2 |
| Caramel/caramel squares | 2.3 |
| White mint | 0.9 |
| Mints/cream mints | 1.4 |
| Yogurt candy | 1.4 |
| Vanilla squares/piece of vanilla | 1.4 |
| Other | 3.7 |
| Don't know | 2.8 |

7719d