UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
CURTIS WINSTON, individually and on behalf of :
all others similarly situated, :
 :
                                Plaintiffs, : **MEMORANDUM & ORDER**
 :
                -against- : 19-CV-3735 (ENV) (JO)
 :
THE HERSHEY COMPANY, :
 :
                              Defendants. :
----------------------------------------------------------------- x
VITALIANO, D.J.

      Plaintiff Curtis Winston, individually and on behalf of all others similarly situated, brings this action against the Hershey Company ("Hershey"), alleging deceptive business acts and practices in violation of New York General Business Law ("GBL") §§ 349 and 350, fraud, breach of express warranty, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"), and unjust enrichment. *See* Compl., Dkt. 1.[1] Defendant now moves to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. *See* Def.'s Mot. to Dismiss, Dkt. 14. For the reasons that follow, the motion is granted.

Background[2]

      Hershey manufactures, distributes, markets, labels and sells Reese's peanut butter cups, a

---

[1] The complaint also purports to bring claims for negligent misrepresentation and breach of implied warranty of merchantability, Compl. ¶¶ 78–94, but plaintiff withdraws those claims in his memorandum of law. Pl.'s Opp'n Mem., Dkt. 16, at 5 n.1. Those claims are, accordingly, dismissed.

[2] The background facts are drawn from the complaint and are deemed true for purposes of this motion, and all reasonable inferences are drawn in favor of plaintiff. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). Also considered on the

candy product consisting of a peanut butter filling enrobed in one of a several coatings, including milk chocolate and dark chocolate. Compl. ¶¶ 1, 3. The product at issue in this litigation is Reese's "White" (the "product"), a variant of Reese's peanut butter cups made using a "white confection coating." *Id.* ¶ 1. Reese's White contains no white chocolate. Indeed, the ingredient list on the back of the packaging reveals that the product is made with palm oil, shea oil, sunflower oil and other vegetable oils.[3] *Id.* ¶¶ 6, 8. A simple reading of the ingredient list makes plain that white chocolate is not among them. Plaintiff claims, however, that defendant, through both the design of Reese's White's packaging and a broader set of deceptive marketing tactics, misleads consumers into believing that the product does in fact contain white chocolate.

Reese's White's packaging features the standard Reese's brand logo, but most of the packaging is ivory white rather than the typical orange, and the word "white" appears above the Reese's brand name. *Id.* ¶¶ 8–10. A depiction of the front of the packaging is shown below:



---

motion are any documents attached to or referenced in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3] The Food and Drug Administration's ("FDA") regulations require products to contain a minimum of 20 percent by weight of cacao fat in order to qualify as white chocolate. 21 C.F.R. § 163.124(a)(2).

*Id.* ¶ 8.

Plaintiff admits in his papers that the packaging does not explicitly state the product is white chocolate. *Id.* ¶ 98. Rather, plaintiff alleges that Reese's peanut butter cups are known for their milk chocolate and dark chocolate varieties, so consumers assume that a variant identified as only as "white" is in fact white chocolate. *Id.* ¶¶ 5–6. Likewise, plaintiff claims that the absence of any modifying term before or after "white," such as "crème" or "coating," renders the packaging misleading because consumers are unable to differentiate between white chocolate products and cheaper substitutes. *Id.* ¶¶ 8–9. As one example of this confusion, plaintiff highlights a news story from 2018 featuring Reese's peanut butter cups in which the author refers to Reese's White as "white chocolate cups." *Id.* ¶¶ 17–22.

In addition to his allegations relating to the packaging itself, plaintiff also alleges that defendant promotes Reese's White as white chocolate through a grab bag of deceptive marketing tactics. For instance, plaintiff alleges that defendant places Reese's White in marketing campaigns alongside its milk and dark chocolate counterparts. *Id.* ¶¶ 4, 12. Further, plaintiff claims that defendant instructs third-party vendors to group Reese's White together with its milk and dark chocolate counterparts in stores, and alongside other chocolate products in general. *Id.* ¶¶ 11, 16. Finally, plaintiff suggests that defendant provides descriptions of the product to third-party vendors that cause them to designate the product as "white chocolate." *Id.* ¶¶ 13, 16. As examples of this mislabeling, plaintiff provides three screenshots of third-party websites and one picture of a stock keeping unit label from a third-party store identifying the product as "white chocolate." *Id.* Plaintiff contends that defendant could issue "takedown requests," but chooses not to. *Id.* ¶¶ 14, 16.

Plaintiff does not allege from where or when he purchased the product, but only that he

"purchased the Products based upon the representations on the packaging." *Id.* ¶ 59. Plaintiff claims that he was injured because he purchased the product under the false impression that it contained white chocolate, and if he had known that it did not, he would not have purchased it or would have paid less for it. *Id.* ¶¶ 45–48. As a result of this alleged injury, plaintiff filed this lawsuit on behalf of a putative class of similarly-situated individuals seeking preliminary and permanent injunctive relief, monetary damages, including treble and punitive damages, and costs and attorney's fees. *Id.* at 16, ¶¶ 2–5.

## Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation and internal quotation marks omitted). In deciding such a motion, as previewed above, the district court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, the court need not credit any "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making its determination, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint

by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers*, 282 F.3d at 152–53; *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Discussion

I.   New York General Business Law §§ 349 and 350

New York General Business Law ("GBL") § 349 prohibits deceptive business acts or practices as unlawful. N.Y. GEN. BUS. LAW § 349. GBL § 350 targets essentially the same conduct, specifically in the form of advertising. *Id.* at § 350; *see also New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to [§] 349." (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 863 n.1, 774 N.E.2d 1190,1195 n.1 (2002))). To state a claim under either section, plaintiff must plausibly allege that defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 525 (E.D.N.Y. 2017) ("The elements of the plaintiffs' claims under [GBL §§ 349 and 350] are the same.").

   A.   *Reese's White's Packaging*

The principal dispute between the parties is whether the product's packaging is materially misleading. To determine whether acts or practices are materially misleading under GBL §§ 349 and 350, courts apply an objective test: whether defendant's representations (or lack thereof) are likely to mislead "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Though usually a question of fact, where the totality of

the circumstances make it appropriate, a court may decide this question as a matter of law. *Goldemberg v. Johnson & Johnson Consumer Co.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

Interestingly, despite its seeming uniqueness, Winston's strike against a candy maker claiming to have been misled about a "white chocolate product" is not the first one launched. There is at least one other, and it involves a different product manufactured by Hershey. Earlier this year, a court in this district found it implausible that reasonable consumers would be misled into believing that "Kit Kat White" candy bars contained chocolate due to the white color of the packaging and the modifying adjective "white" above the brand logo. *See Rivas v. Hershey Co.*, No. 19-CV-3379 (KAM) (SJB), 2020 WL 4287272, at **4–6 (E.D.N.Y. July 27, 2020). In so holding, the *Rivas* court first noted that "there is no statement anywhere on Kit Kat White's packaging, or in any Hershey advertisement cited by Plaintiff, that describes the product as containing white chocolate." *Id.*

Next, the *Rivas* court relied on the Second Circuit's decision in *Geffner*. In that case, the Second Circuit found implausible a claim that the modifying adjective "diet" on a can of soda would mislead consumers into believing the product helps with weight loss, observing that the dictionary defines "diet" in the soft-drink context as meaning "reduced in or free from calories" and not as conveying "a more general weight loss promise." *Geffner*, 928 F.3d at 200 (internal citations omitted). Applying this approach to the case before it, the *Rivas* court noted that "the dictionary defines 'white' as, *inter alia*, 'of the color of new snow or milk'" and concluded that the modifier "white" was not a false claim that Kit Kat White contained white chocolate, but

6

rather an accurate description of its color. *Rivas*, 2020 WL 4287272, at *5 (quoting "White," MERRIAM-WEBSTER, available at https://www.merriam-webster.com/dictionary/white)).[4]

Two recent decisions from district courts in the Ninth Circuit, also relied on by *Rivas*, reached virtually identical outcomes to that reached in *Rivas*.[5] In *Cheslow v. Ghirardelli Chocolate Co.*, the court dismissed a claim that Ghirardelli's "Classic White Chips" gave consumers the impression that they were purchasing white chocolate, noting that the word "chocolate" appeared nowhere on the packaging and the word "white" described not the substance of the chips but their color. *See Cheslow v. Ghirardelli Chocolate Co.*, No. 19-cv-07467 (PJH), 2020 WL 1701840, at **4–5 (N.D. Cal. Apr. 8, 2020). Similarly, in *Prescott v. Nestle USA, Inc.*, the court adopted the *Cheslow* court's reasoning and dismissed a claim alleging that the packaging of Nestle's "Toll House's Premier White Morsels," despite the absence of the word "chocolate," would misled consumers to believe that the product contained white chocolate. *See Prescott v. Nestle USA, Inc.*, No. 19-cv-07471 (BLF), 2020 WL 3035798, at **3–4 (N.D. Cal. June 4, 2020).

Looking to the packaging at issue here, the Court finds it implausible beyond genuine dispute that a reasonable consumer acting reasonably under the circumstances would be misled into believing that the product contains white chocolate. Erecting a towering obstacle to the

---

[4] To be fair, the *Rivas* court also observed that the packaging included the word "crème," stating, "Even if Plaintiff's allegation may have been plausible if the packaging *only* included the words 'Kit Kat White,' the product is also clearly described as "[c]risp wafers [i]n [c]rème." *Rivas*, 2020 WL 4287272, at *5 (emphasis in original). Of course, the *Rivas* court's observation in no way suggests that it would have found the complaint plausible if the packaging did not include the word "crème."

[5] Although the claims in these cases were brought under California law, both California and New York apply the "reasonable consumer" test in the context of state consumer protection laws. *See Fink*, 714 F.3d at 741.

plausibility of plaintiff's claim, the packaging includes no reference whatsoever to the word "chocolate." Compl. ¶ 8. To the contrary, as plaintiff admits, a glance at the ingredient list confirms that the product does *not* contain chocolate. *Id.* ¶ 6; *see also Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) ("The ingredient lists thus clarify—in exactly the spot consumers are trained to look—that the premium ingredients are not the most predominant ingredients.").

Faced with this steep hurdle, plaintiff nevertheless attempts a vault by arguing that the word "white" and the white color of the packaging are likely to mislead reasonable consumers because the "Reese's" product line is known for its chocolate peanut butter cups. Pl.'s Opp'n Mem. at 11, 13; *see also* Compl. ¶¶ 5–6. This argument is unpersuasive. That defendant sells peanut butter cups made with chocolate does not make it reasonable to assume that a "white" peanut butter cup sold by defendant is also chocolate, especially when the word chocolate appears nowhere on the packaging and the ingredient list confirms its absence. Against this backdrop, the Court is in agreement with the courts in *Rivas*, *Cheslow* and *Prescott* that the word "white" and the white color of the packaging are accurate indicators of the product's color, not false representations that the product contains white chocolate. *See, e.g.*, *Prescott*, 2020 WL 3035798, at *4 ("No reasonable consumer could believe that a package of baking chips contains white chocolate simply because the product includes the word 'white' in its name or label.").

Plaintiff's attempt to minimize the significance of the ingredient list is equally futile. It is true that an accurate ingredient list or disclaimer will not defeat a deceptive business practice claim where the packaging prominently features a misleading word or phrase. *See, e.g.*, *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636–37 (2d Cir. 2018) (holding that packaging prominently featuring the words "whole grain" or "made with whole grain" could mislead

consumers to believe product was composed predominantly of whole grain, despite disclaimer indicating how much whole grain the product actually contained); *Goldemberg*, 8 F. Supp. 3d at 478–80 (holding that product name "Active Naturals" could mislead consumers to believe product contained only natural ingredients, despite label listing synthetic ingredients); *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (holding that product name "vitaminwater" could mislead consumers to believe product was "either composed solely of vitamins and water, or that it is a beneficial source of nutrients," despite label indicating sugar content). But here, there is no similar misleading word or phrase on the packaging; rather, the ingredient list confirms what the absence of the word "chocolate" on the packaging suggests—that Reese's White is not white chocolate. *See Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020) (distinguishing *Mantikas* because "the ingredient list here does not correct any misleading information; rather, it confirms that the Mashed Potatoes contain predominantly butter, as opposed to vegetable oil").

Nor can plaintiff's claim be saved by his identification of a handful of third-party vendors and a journalist who erroneously identified the product as white chocolate. *See* Compl. ¶¶ 13, 16–22. Although these parties may have misapprehended the product's packaging, the mere fact that a few third parties either intentionally or accidently misrepresented the product as containing white chocolate does not establish, on this record, that the product's packaging is misleading. Indeed, as the *Cheslow* court aptly observed regarding anecdotal allegations of consumer confusion, "Simply because some consumers unreasonably assumed that 'white' in the term 'white chips' meant white chocolate chips does not make it so." *See Cheslow*, 2020 WL 1701840, at *9. Accordingly, plaintiff's claims under GBL §§ 349 and 350 cannot survive on

9

this theory.

### B. Other Alleged Deceptive Business Practices

In addition to its claims based on the packaging itself, plaintiff also alleges that defendant engaged in a slew of other deceptive practices to increase the chance that consumers would be misled. For example, plaintiff claims that defendant "[a]rrang[es], through instructions to suppliers and vendors, for the Products to be placed alongside milk and dark chocolate varieties" and "provid[es] descriptions of the Products to third-parties, who designate the Products as 'white chocolate.'" Compl. ¶¶ 13, 16.

These allegations fail to state a claim for three reasons. First, in light of the discussion in Part I.A *supra*, mere placement of the product alongside other Reese's candy bars would not cause a reasonable consumer to suddenly be misled into believing the product contains white chocolate. *See Cheslow*, 2020 WL 1701840, at *9 ("[Such product placement] could just as easily mean that the products are all made by the same manufacturer and therefore grouped together to distinguish from products made by other manufacturers."). Second, with respect to the mislabeling of the product as white chocolate by third parties, plaintiff has not plausibly alleged that defendant was actually involved in that mislabeling.[6] *See Troncoso v. TGI Friday's Inc.*, No. 19-CV-2735 (KPF), 2020 WL 3051020, at *12 (S.D.N.Y. June 8, 2020). Finally, plaintiff has alleged only that he was misled by the packaging, so even if these other alleged practices were materially misleading and attributable to defendant, his complaint fails to allege that his injury was caused by any one them. *See* Compl. ¶ 59; *see also Goldemberg*, 8 F. Supp.

---

[6] To the extent plaintiff intended to show defendant's involvement by alleging that defendant describes its product in a way that somehow causes third-party vendors to erroneously advertise the product as white chocolate, that allegation is so conclusory and devoid of factual content that the Court need not, and does not, credit it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

10

3d at 480 ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."). Accordingly, plaintiff's claims under GBL §§ 349 and 350 on this theory must also be dismissed.[7]

II. <u>Fraud</u>

A viable claim for fraud under New York law requires "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Such claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Id.* at 402–03. In this context, plaintiff is required to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

As should likely have been supposed from discussion of Winston's deceptive business

---

[7] In addition to the allegations in his complaint, plaintiff also points to two exhibits attached to his memorandum of law. The first is a proposal defendant sent to FDA in 1989 noting the proliferation of imitation white chocolate on the market and suggesting a standard of identity for white chocolate. Pl.'s Opp'n Mem., Ex. A. The second reports the results of a consumer survey conducted in 1990, which shows that when presented with a generic white confection bar, over 61% of a group of 216 consumers identified it as white chocolate. *See id.*, Ex. B. Neither of these exhibits were attached to or even referenced in the complaint, so the Court need not consider them. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). At any rate, even if they were properly incorporated into the complaint, these tangential, at best, exhibits would not change the outcome here.

11

acts and practices claims in Part I, *supra*, Winston's fraud claim is doomed from the start since it rests primarily on his allegations that the product's packaging is misleading. *See* Compl. ¶¶ 97–98. To recapitulate this critical point, the mere fact that the packaging is white in color and features the word "white" is not a representation that the product contains white chocolate, and because the ingredient list discloses that the product does not in fact contain white chocolate, there is no need for modifying terms like "crème" or "coating." Beyond that, plaintiff's allegations that defendant "has promoted the Products as white chocolate" or has described the product in a way that causes third parties to identify the product as white chocolate, Compl. ¶¶ 4, 13, are without reference to any particular advertisements or statements made by Hershey. Pleadings such as these are wholly devoid of allegations that supply a representation or omission specific enough to meet the demands of Rule 9(b). *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). Consequently, unhinged to any plausibly pleaded material misrepresentation or omission, this claim too must be dismissed.

III. <u>Breach of Express Warranty</u>

To properly plead breach of an express warranty under New York law, plaintiff must allege "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase . . . ." *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016) (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. App'x 110, 111–12 (2d Cir. 2010)). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Further, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall

12

conform to the description." *Id.* § 2-313(1)(b).

Again, the thrust of plaintiff's claim here is that defendant warranted via the product's packaging that the product contained white chocolate when it in fact did not. *See* Compl. ¶ 87 ("The Products warranted . . . that they possess substantive, functional, nutritional, compositional, organoleptic, sensory, physical and/or other attributes when they did not."); *see also* Pl.'s Opp'n Mem. at 17. There is, of course, no such express warranty on the product's packaging. This claim too is, therefore, dismissed.

IV.   The Magnuson-Moss Warranty Act Claim

"The [Magnuson-Moss Warranty Act "(MMWA")] grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). In responding to Hershey's motion, plaintiff has neglected to address defendant's argument for dismissal of his MMWA claim, and has, therefore, abandoned it. *See Laface v. Eastern Suffolk BOCES*, No. 2:18-CV-01314 (ADS) (AKT), 2019 WL 1959489, at *8 (E.D.N.Y. 2019) ("In the Second Circuit, '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss . . . constitute an abandonment of those claims.'" (quoting *Youmans v. Schiro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)). But, even if plaintiff had defended the claim, his effort would have been fruitless, as the complaint nowhere alleges the existence of a "written warranty" as required under MMWA. *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (holding that "All Natural" label on potato chip bag does not constitute a written warranty as defined by MMWA). With no basis in law or fact, this claim is dismissed.

V.  Unjust Enrichment

Unjust enrichment is an equitable remedy, available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791, 944 N.Y.S.2d 732, 740, 967 N.E.2d 1177, 1185 (2012). Pointedly, "[u]njust enrichment claims should be dismissed 'where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) (quoting *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, No. 14-cv-6498 (LTS) (HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018)); *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment claim because it was duplicative of plaintiff's other dismissed claims).

As it relates to this claim, the complaint alleges that defendant "obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." Compl. ¶ 102. Plaintiff fails to show how this claim is not purely duplicative of his other claims, and, in any event, plaintiff's boiler-plate allegation does nothing to suggest that the circumstances here created an equitable obligation running from defendant to plaintiff. *See Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883, at *5 (E.D.N.Y. July 26, 2019). Winston's unjust enrichment claim cannot withstand the most gentle scrutiny and does not survive the motion.

VI.  The Food Drug and Cosmetic Act

As a final matter, in his opposition memorandum, Winston appears to advance a claim

not explicitly pleaded in his complaint. Specifically, he suggests that the product's packaging violates 21 U.S.C. § 343(c), part of the Food Drug and Cosmetic Act ("FDCA"), because it does not feature the word "imitation." Pl.'s Opp'n Mem. at 5–9. As Hershey rightly points out, plaintiff may not assert new claims in a memorandum of law. *See Doe v. Merck & Co. Inc.*, No. 16-CV-04005 (FB) (RLM), 2019 WL 1298270, at *1 n.3 (E.D.N.Y. Mar. 21, 2019) (noting that "parties [are] prohibited from using briefs as vehicles to amend complaints"), *aff'd*, 803 F. App'x 559 (2d Cir. 2020); *see also* Def.'s Reply, Dkt. 17, at 11.

But, the death knell tolls for this claim not only because of procedural ambush. Even if this claim were properly pleaded in plaintiff's complaint, it would fail because FDCA may not be enforced by private parties. *See Trisvan v. Checkers Drive-In Rests., Inc.*, No. 16-CV-7000, 2020 WL 906635, at *5; *see also* 21 U.S.C. § 337 (assigning the enforcement of FDCA to the United States and the States if the food is located within the state). Consequently, this claim must also be dismissed.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim is granted in its entirety. Given the nature of the case and the bases of decision, any attempted amendment would be futile, and, for that reason, leave to amend shall not be granted. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       October 26, 2020

/s/ENV
-----------------------
ERIC N. VITALIANO
United States District Judge